[Decided January 28, 1888.]

# C. W. MOHR *v.* CLARK & CURTIS, H. F. SUKSDORF, AND H. W. KNOX.

SECTION 1975, CODE—LIEN OF FARM LABORERS—CONTRACTOR AND EMPLOYE.— Section 1975 of the Code was intended to secure and protect only the personal earnings of laborers, and was not intended to give a lien to contractors who hired the services of others to do labor upon a farm or land as provided by section 1957. The lien is given to laborers actually performing the services with their teams or other implements of labor, but not to persons performing no personal labor themselves, but employing the labor of others.

APPEAL from the District Court holding terms at Spokane Falls.   Fourth District.

The material facts appear in the opinion of the court.

*Messrs. Allen, Hunter & Allen,* for the Appellants.

Any one who has done the work is entitled to the lien. (Phillipps on Mech. Liens, secs. 35, 36, 40; Kneeland on Mech. Liens, pp. 16–18.)   Threshing of a crop is labor for which a lien is given by our statute.   (*Hogue* v. *Sheriff*, 1 Wash. 173.)   The legislature did not intend to confine the lien to the actual personal service of the lienor, but intended to include that furnished by the contractor for the following reasons: 1. The contractor has been universally favored in legislation, and it is fair to presume that our legislature was governed in this respect by the same views of policy that other legislatures have entertained. (Phillipps on Mech. Liens, secs. 36–40).   2. Threshing is usually done in this country by contract and by the use of machines and by the crews of hands who accompany the machine.   The legislature, knowing this custom, and having provided for similar labor, must be held by section 1975 to have intended to protect this deserving class.   3. Section 1975 was passed in view of the construction that had been placed on similar language by our Supreme Court in *Hogue* v. *Sheriff, etc., supra.*   4. The whole scope, as well as the particular expression of the lien law, show that the contractor was intended to be protected.   5. The language employed in section 1957 of the Code is identical in its import with that of section 1955, so far as it confers a lien, and it cannot be doubted that the terms of section 1957 are ample to include a contractor.   6. That section 1975 was not intended to cover personal labor alone, but to include that performed by agents, servants, and machines, is clear from the fact that the statute confers a lien on corporations, who cannot perform *personal* labor, but labor only by means of agents and machines. Had a corporation, with a crew of coolies, threshed the grain of defendants, its claim to a lien would have been good beyond a dispute.   7. Section 1981 of Code requires the act to be liberally construed.

*Mr. J. F. Porter,* and *Messrs. Binkley & Taylor,* for the Appellees.

A contractor is not entitled to a lien unless specially mentioned in the act authorizing liens. (*Winder* v. *Caldwell,* 14 How. 434.) If the contractor had a lien and the laborers also, it would create a double lien upon the property, and the contractor would only be subrogated to the lien of the laborer when he paid the claim of the latter. But the liens cannot be assigned. (*Bradley* v. *Spofford,* 23 N. H. 444; 55 Am. Dec. 205; *McIntyre* v. *Carver,* 2 Watts & Serg., 37 Am. Dec. 19.)

Mr. Justice Allyn delivered the opinion of the court.

On October 21, 1886, Clark & Curtis commenced a suit to foreclose a chattel mortgage on certain grain given by the defendant H. F. Suksdorf. Defendant Knox was joined as claiming an interest in the grain.

On October 27, 1886, intervenor, appellant herein, began a suit against said H. F. Suksdorf and one F. W. Suksdorf, an alleged partner, to recover some $800 for threshing the mortgaged grain, asserting a lien under section 1975 of the Code for such threshing.

On November 16, 1886, appellant intervened in the principal action of *Clark & Curtis* v. *Suksdorf & Knox* to protect his lien. Defendant answered, setting up a waiver of lien and payment; subsequently they filed amended answer, setting up the additional defense that the threshing was done by means of intervenor's machinery, teams, and servants, and was not done by his *personal labor.* Replies were filed, denying the waiver and payment.

On the trial intervenor was nonsuited on the ground that the threshing was not done by his personal labor, but by means of his machines, teams, and servants.

A finding of facts is stipulated for a decision herein upon the question "whether a man is entitled to a lien for such work done by his servants, teams, etc., and not by his personal labor."

It was further stipulated "that said intervenor was ac-

tually present during said threshing, and directed the same and assisted therein, but never claimed or filed any lien for his personal services."

The decision of the question depends upon the construction to be given section 1975 of the Code, which reads as follows:

"Any person who shall do labor upon any farm or land, in tilling the same, or in sowing, or harvesting, or laboring upon, or securing, or assisting in securing, or housing any crop or crops sown or raised thereon during the year in which said work or labor was done, such person has a lien upon all such crop or crops as shall have been raised upon all or any of said land for said work and labor."

It is said that as lien laws are required to be liberally construed (sec. 1981), "any person who shall do labor upon any farm," etc., can be extended to cover those who labor through others, i. e., by employing laborers, as in this case.

The object and purpose of the lien law is apparent. It was intended to secure and protect personal earnings of laborers beyond question, and whether a man, because he may be doing labor, yet in the same labor is employing other laborers, and is thus also an employer or contractor, can come within the scope of this act, is a very important question. So far as he may actually labor, he may come within the beneficent provisions of this law; but so far as his labor consists in looking after his laborers and supervising his contract, this comes more in the line of a business employment or speculation than of personal labor. There is a clearly defined line between the contractor, the employer, and the laborer, and although each may labor in his own way, the class to which the "laborer" belongs is plain, and the contractor or employer certainly does not come within it.

It is said that as the laborer with his sickle is allowed a lien, so the contractor or employer of a large body of men doing this for him is to be substituted for the single harvester, from the needs of a larger and more extensive system of farming. This is an admirable argument to

address to the legislature, perhaps, for enlarging the operation of the law; but the court cannot consider it unless the reason or purpose can be gathered from the language of the act. That the purpose of a lien was for the benefit of mechanics or laborers is evident; they are usually poor men, dependent on their daily earnings, and can ill afford to lose this, or indulge in the uncertainties of litigation. The employer or contractor is, as a rule, just the opposite, and for this reason the object, or purpose, of a lien law for one by no means makes an argument for the other. A laborer may own a team of horses, or a machine, and not be debarred from claiming or having a lien for his labor combined with these; they are merely a part of his labor, his implements, the means by which he labors and earns; but when he adds to these other laborers, he then becomes an employer or a contractor, as in this case. It does not follow that such "other laborers" are, as his animals or machinery, the mere incidents by which he works; they are laborers as he is, and, besides, they have the right of lien equally with him.

If the reasoning which will support the lien of the laborer with his horses, etc., could be thus applied to the employment of men, the rule would be extended indeed, and the lien law intended for the needy laborer could be applied to all employers or contractors of labor, no matter how large the number employed or how vast the enterprise.

The mere statement of this would seem to be sufficient answer to the proposition, when we recall the well-known reasons for the enactment of these mechanics' lien laws. The case of *Winder* v. *Caldwell*, 14 How. 434, is the only case cited which is at all analogous to the case at bar, and it bears out fully the view we have above expressed.

It is attempted to uphold the construction claimed by appellant by other sections of our lien laws. We see no parity of reasoning; in fact, section 1966 would sustain the views herein expressed, rather than those claimed for it.

That the appellant might have had a lien covering his individual labor, if any, and also including that of his machine and teams, had he claimed it, is quite possible, as one

may occupy a dual capacity, and be both a laborer and an employer. He has not claimed this; he relies exclusively upon his right as an employer to claim a lien covering the labor of his employes. This he cannot do.

The court below correctly construed section 1975, and therefore the judgment is affirmed.

JONES, C. J., and LANGFORD, J., concurred.