EMPIRE STATE SURETY COMPANY, Appellant, v. CITY OF DES MOINES, CENTRAL STATE BANK, B. N. MOSS, Trustee in Bankruptcy of Marsh Bridge Company et al., and other Consolidated Cases.

**Municipal corporations:** SPECIAL TAXES: EQUITABLE RELIEF. A municipal taxpayer can not have equitable relief against a special bridge tax, levied under chapter 36, laws Thirty-second General Assembly, because of technical defects, when the relief sought would not benefit the city or taxpayers but would simply result in a relevy.

**Same:** SURETYSHIP: ESTOPPEL. The surety on a bridge contractor's bond is estopped to complain that special bridge tax certificates were issued before the work was completed, by filing with the city its written consent to their premature issuance. And for the same reason it can not insist on a release from liability because of a modification of the contract by the transaction.

**Same:** ESTOPPEL: BENEFICIAL ACTS. Where a bridge company consented to the issuance of tax certificates for its benefit, its trustee in bankruptcy was in no position to insist on their invalidity because issued before the work was completed.

**Same:** ESTOPPEL. A surety company can not complain of the extension of time for completion of work to which it has formally assented.

**Same:** DISCHARGE OF SURETY: PREMATURE PAYMENTS. In this case the contract for the construction of a bridge provided for completion of the work during the following year; for part payment out of a special fund and an additional amount which might be available in the bridge fund of the current year when the work should be completed. The work was not completed in the year originally contemplated but the time for its completion was extended. *Held,* that payments made during the year in which completion of the work was originally contemplated were not a violation of the contract affecting the sureties' liability.

**Same.** Where a municipal contractor's bond indemnifies materialmen the surety is not released from liability to them by premature payments to the contractor, made after accrual of their claims.

**Mechanic's liens:** SUFFICIENCY OF STATEMENT: CONCLUSIVENESS. The recitals in a statement for a mechanic's lien as to when the last items of charge were furnished is not conclusive, but parol evidence may be received to show the actual facts, provided a party in interest has not been prejudiced by the insufficiency of the statement.

**Same:** SUBCONTRACTORS: ENFORCEMENT OF CLAIMS. Materialmen furnishing a municipal bridge contractor are entitled primarily to payment out of a fund reserved by the city until completion of the contract, and to a conditional judgment against the sureties on the contractor's bond.

**Same:** EFFECT OF FILING CLAIMS IN BANKRUPTCY. The allowance of subcontractors' claims against the contractor in bankruptcy will not affect their right to enforce the same against the surety on his bond, or to payment out of a fund reserved by the city until completion of the work.

**Same:** RIGHTS OF MATERIALMEN: REVIVOR. One furnishing material to a municipal bridge contractor is not entitled to enforce payment of his claim out of funds reserved by the city until completion of the work, unless he has filed his statement, as provided by statute, within thirty days from the date of the last item of material furnished. And where he has lost his right by such failure it can not be revived by subsequently furnishing further material for completion of the work to the contractor's trustee in bankruptcy.

**Same:** ARTICLES NOT INCORPORATED IN STRUCTURE, TOOLS, ETC. The right to a mechanic's lien for material furnished only applies to such as go into the structure, and not to articles used in and about the building or improvement.

**Bankruptcy:** LIABILITY OF INSOLVENT'S SURETIES. The trustee in
12   bankruptcy of an insolvent bridge contractor, who proceeds to
complete the work that a reserve payment may be had, is not en-
titled to recover of the sureties on the contractor's bond a sum
required for its completion in excess of the reserve payment.

**Public improvement:** CONTRACTOR'S BOND: LIABILITY OF SURETY.
13   Where a contractor's bond is simply a guarantee of payment for
labor and material for the improvement, the surety on the bond
can not be held for material and supplies which become a part
of the machinery and equipment used in the construction of the
improvement, but not actually going into the same.

*Appeal from Polk District Court.*—HON. WM. H. Mc-
HENRY, Judge.

TUESDAY, JUNE 6, 1911.

ACTION in equity brought by plaintiff as surety on a
bond given by the Marsh Bridge Company to secure the
performance by the latter of the obligations of a contract
with the city of Des Moines for the construction of a
concrete bridge across the Des Moines river within the
city limits, known as the Locust Street Bridge, to procure
its release from liability on such bond, or to be subrogated
to the rights of claimants for labor and material, who
should be found to have valid claims, payable out of the
amount remaining due from the city on its contract with
the Marsh Bridge Company. With this action was con-
solidated an action brought by Wayland C. Ballard, as
taxpayer of the city of Des Moines, to restrain the collec-
tion of a certain special bridge tax and certificates paya-
ble therefrom, levied and issued on account of the construc-
tion of said bridge on the ground that the said tax and
certificates had been levied and issued in violation of law.
In these cases there was a decree against plaintiff in each,
dismissing the action on the merits, and in each case the
plaintiff appeals. Various actions brought by claimants
who furnished labor and material for the construction of

the bridge against the surety company on its bond for unpaid claims on account for such labor and material were also consolidated with that of the surety company against the city. The plaintiffs in these cases have been made defendants in the main case. In each of these cases the court in its final decree determined what amount, if anything, was due to the claimant, and rendered judgment for the amount found due to him; and the appeal of the surety company covers the judgments included in the decree in favor of these various claimants against it, as well as its provisions denying relief to the surety company and to Ballard. Some of the claimants gave notices of cross-appeal, and there was a notice of appeal by B. N. Moss, trustee of the Marsh Bridge Company, bankrupt. The Empire State Surety Company, having first served notice of appeal, will be treated as the appellant. *Modified* and *affirmed.*

*Charles A. Clark* and *James C. Hume*, for appellant.

*R. O. Brennan* and *J. M. Parsons*, for appellee City of Des Moines.

*Guernsey, Parker & Miller*, for appellee Central State Bank.

*Clark & Hutchinson*, for appellee B. N. Moss, trustee in bankruptcy of the Marsh Bridge Company.

*C. W. Johnston, Bowen & Alberson, C. F. Maxwell, Read & Read, C. S. Bradshaw, Dale & Harvison, Schenk & Berryhill* and *Hager & Powell*, for other appellees.

McCLAIN, J.—On August 21, 1907, the city of Des Moines entered into a written contract with the Marsh Bridge Company for the erection of a concrete bridge over

the Des Moines river at Locust street for the contract price of $124,800, to be completed in September of the following year. Under this contract, $25,000 in warrants drawn on the special appropriation made from the bridge fund of the current year was to be paid on estimates as the work progressed, and $25,000 more was to be paid by warrants out of the bridge fund of the next year so far as the amount of that fund would permit, and the balance of the contract price was to be paid from the proceeds of a tax levied in accordance with the provisions of chapter 36 of the Laws of the Thirty-Second General Assembly, in certificates issued in anticipation of the collection of such tax in accordance with that statute. To secure the performance of this contract on the part of the Marsh Bridge Company, it executed its bond to the city of Des Moines "and to all persons who may be injured by any breach of any of the conditions" of the contract in the sum of $30,000; a condition of the bond being that the bridge company should pay "all claims for labor and material furnished for said work and save said city of Des Moines harmless from . . . any liens and claims for labor and material under the laws of the state of Iowa." The Empire State Surety Company became the surety for the Marsh Bridge Company on this bond. Under this contract and bond the Marsh Bridge Company proceeded with the construction of the bridge. Certain modifications of the contract as to the method of construction were made by agreement between the city and the bridge company after the date fixed for the final completion of the work. On January 5, 1909, when, as the trial court found, the piers for the bridge were fully constructed and the bridge had been filled with earth approximately to the level of the street and was passable for teams and for passengers and was in use by the public in that manner, the city council passed a resolution in which it was recited that it was deemed inadvisable to construct the paving and

cement walks on the bridge until such time as the filling had become thoroughly settled and compact, and that it was equally inadvisable at that season of the year to finish the cement work incident to balustrades and steps, and that the public convenience required the opening of the bridge without unnecessary delay; and it was therefore provided that certificates for the balance of the total contract price not already paid in warrants be issued for the total amount of $74,800, of which amount $18,000 should be retained by the city until such time as the bridge company should have fully performed its contract and until the final acceptance of the bridge, and that the balance of said bridge certificates should upon the surrender of partial estimate obligations be delivered to the bridge company as part payment of the contract price. In this resolution it was provided that the bond given by the bridge company on which the Empire State Security Company was surety should remain in full force and effect, and that the resolution should not have any force or effect unless the bridge company should file with the city clerk its own written acceptance of the provisions thereof and also the consent and acceptance of the surety company. The acceptance of the bridge company thus provided for was filed on the 7th of the same month, and on the 18th there was filed with the city clerk the consent of the surety company to the resolution last above referred to; such assent bearing date the 16th and purporting to be signed at the principal office of the company in New York City. On the 13th of the same month an ordinance was passed for the issuance of certificates bearing date on the 15th; and also on the 13th an ordinance was passed levying and appropriating a special tax as provided by chapter 36, Acts of the Thirty-Second General Assembly, authorizing the city to levy taxes for the purpose of paying for the building of bridges and the issuance of certificates against such levies. Certificates were accordingly issued for $74,800, bearing date

on the 15th as provided in the resolution, and on the 19th these certificates with the reservation of $18,000 as above indicated for the completion of the bridge were delivered by the proper officers of the city to certain banks under the direction of the bridge company and receipts for the certificates so delivered bearing the same date were given to the city auditor. The Central State Bank now holds all of these certificates. Soon after the issuance of the certificates, involuntary proceedings in bankruptcy were instituted against the Marsh Bridge Company, and it was declared a bankrupt, B. N. Moss being appointed its trustee, and by order of the bankruptcy court assented to by the city and other parties, not including the surety company, the trustee proceeded to carry to completion the contract entered into by the bankrupt with the city, which had already been partially performed.

The contention in the *Ballard* case is briefly that the levy of the special tax and certificates issued in pursuance thereof were invalid, and their enforcement should be enjoined for the reason that the city was without jurisdiction or authority to act prior to the completion of the bridge in view of the provision of the statute authorizing such levy of tax and issuance of certificates (32 G. A., chapter 36, already referred to), in which it is recited that when the whole or any part of the cost of building any bridge such as is referred to in the act "shall be levied upon all property within said city, it shall have the power after the completion of the work by ordinance or resolution to levy at any one time the whole or any part of the cost of such improvement upon all of the taxable property within such city," designating the percentage to be paid each year and the number of years given for the maturity of each installment, and that certificates under such levy shall be issued payable out of said tax as collected. The contention of the surety company is that for the same reasons the levy and certificates were wholly invalid, and that the city is

now bound to make a valid levy and issue valid certificates which shall be applied to the payment of claims for labor and material for the payment of which the surety company is obligated under its bond. The surety company also contends that the issuance of the bridge certificates before the completion of the bridge enhanced its liability and resulted in its discharge from all liability on said bond. The trustee of the bridge company joins in the contention that the levy and certificates were invalid, and that a new levy should be made and new certificates issued. These contentions may be properly disposed of in one division of this opinion.

I. Much is said in argument on the questions whether the language of the statute as to the time when the levy may be made and the certificates issued is mandatory or directory only, and as to whether the city council was so far without jurisdiction as that its action in making the levy and ordering the issuance of certificates was void. We are not impressed with the necessity of an elaborate discussion of these questions. It may well be that Ballard, although in fact the local agent of the surety company through whom negotiations for procuring the bond and for securing its assent to the making of the levy and the issuance of the certificates were conducted, is not estopped as a taxpayer from insisting in behalf of himself and other taxpayers that the action of the council was unauthorized; but certainly no taxpayer is entitled to equitable relief against the enforcement of the levy and the certificates when the result of such relief would be of no possible benefit to the city or the taxpayers of the city. It is conceded that the bridge has been fully constructed and the city is liable for the entire amount of the contract price, and that, if the making of the levy and issue of the certificates in question were invalid the city still would have authority, and it would be its duty to make another levy and

*1. MUNICIPAL CORPORATIONS: special taxes: equitable relief.*

issue other certificates for the portion of the contract price not otherwise paid.  Certainly it is not necessary for a court of equity in the protection of the taxpayers to require the useless formality of a relevy of the same tax and a reissue of similar certificates.  If, on the one hand, the city did by such a proceeding escape the payment of some amount of 'interest on the certificates, it would, on the other hand, incur liability for interest on the debt by reason of having failed to make payment in accordance with the provisions of the contract.  A court of equity ought not to require the doing of things themselves useless and of no benefit to the parties asking relief.

The same considerations are applicable to the surety company.  The amount of its liability would not be lessened by the cancellation of the levy and certificates already authorized.  New certificates hereafter issued would be applicable to the same purpose and would satisfy the same claims as the certificates already issued, and we fail to understand how the surety company would be in any better position.

The theory of the surety company and the trustee in bankruptcy of the bridge company seems to be that in some way the claims held by the banks in satisfaction of which certificates were accepted, which are now held by the Central State Bank, have been so far extinguished that, if those certificates were to be declared invalid and new certificates issued, such new certificates might be applied to the payment of other claims.  No such case is made out.  If the certificates were absolutely invalid when they were issued, then the claims to the payment of which they were applied still exist, and are enforceable, and we are unable to see how anyone would be better off should the court require the apparently useless formality of the reissuance of certificates on a new levy to be made under the same statute and for the same identical purpose.

The surety company is plainly in no situation to

complain of the issuance of the certificates, although they were in fact authorized and issued before the completion of the work. The city made a condition of such issuance that the surety company should assent thereto. Such assent was in fact given by an instrument signed and filed with the city prior to the time when the certificates passed beyond the control of the city officers. The surety company was fully advised at its principal office of the purpose for which a written assent was required. The resolution of the city, the consent of the surety company, and the delivery of the certificates were all parts of one transaction, and it is not for the surety company to now insist that the resolution directing the levy of the tax and the issuance of the certificates was formally passed before the consent was actually filed, or that the certificates actually bore date on the 15th of January, whereas the consent was not in fact signed until the 16th nor filed until the 18th. Until the delivery of the certificates on the 19th, the transaction was incomplete, and before its completion by such delivery the city was not bound. A rescission of its resolution before the certificates were delivered would have left it in the same position as it occupied before the resolution was passed. Having authorized and consented to the delivery of the certificates on the 19th, the surety company is plainly estopped from now contending that the action thus authorized and consented to was invalid. The same considerations dispose of the contention for the surety company that it was released by the modification of the contract involved in the resolution of the city authorizing the issuance of the certificates before the completion of the bridge. Such modification became effectual only on the assent of the surety company thereto; and, after consenting to the modification, it can not now contend that a release resulted which it was the plain and avowed purpose of the city to avoid by requiring such an assent.

2. SAME: suretyship: estoppel.

The trustee of the bridge company is in no better situation to insist on the invalidity of the certificates issued.   Such issuance was procured by the bridge company 3. SAME: estoppel: for its benefit.   It accepted the certificates beneficial acts. as issued and consented to their delivery to its creditors before the bankruptcy proceedings were commenced.   Surely its trustee can not now insist on the invalidity of the action of the city procured and taken advantage of by the bridge company.

We reach these conclusions without finding it necessary to hold that the certificates were negotiable and the Central State Bank a purchaser thereof for value.   The suggestions already made sufficiently dispose of the contention that the resolution of the city council passed January 13th levying the special tax out of which the certificates were to be paid was invalid because it had not been on file with the city clerk for one week before its adoption, and because it was by special provision attached thereto made to take effect at once as being "for the immediate preservation of the public peace, health and safety."   See 32d General Assembly chapter 48, section 20.   None of the parties to this controversy are in a situation to take advantage of any irregularity in the passage of this ordinance. As already indicated, the adoption of the ordinance was a part of the plan to which the bridge company and the surety company assented, and plainly a taxpayer is not in any situation to be entitled to relief on account of such mere technical defect.

II.   The surety company can not complain of the extension of time for the completion of the bridge, for, as already indicated, such extension was formally assented 4. SAME: to by it; but it does insist that payment was estoppel. made by the city to the bridge company otherwise than as provided by the contract, in that the second payment from the bridge fund was made prior to

the completion of the work and out of the fund for a different current year than that referred to in the contract.

The contract executed in August, 1907, provided for the completion of the bridge in September, 1908, and for payment to be made in: "$25,000 in warrants drawn on the special appropriation made for the bridge fund for the current year for the construction of said bridge and warrants for such additional amount not to exceed $25,000 as may be available for that purpose in the bridge fund of the then current year at the time of the completion of said work"—the balance of the contract price to be paid from the proceeds of a tax, etc., as already stated. Then follows this provision: "Payment of the amount above provided to be made in warrants may be made before the final completion of the work as partial estimates in accordance with the provisions of the specification and contract; but such partial estimates shall not exceed during the current year the sum of $25,000 and thereafter shall not exceed the amount available in the bridge fund of the then current year for the payment of the cost of construction of the said bridge." If the work had been completed by the time specified in the contract, there would have been no ambiguity in these provisions, and the payments by warrants issued would have been regular. As a matter of fact, the sum of $25,000 in warrants was paid to the bridge company on estimates prior to March 31, 1908, and substantially that amount was paid in warrants between April 1st of that year and the time of the issuance of the certificates in January of the next year. It is contended for the surety company that payments in warrants after April 1st were premature because the contract only authorized the second payment of $25,000 in warrants to be made by warrants on the bridge fund of the current year in which the bridge was in fact completed. We do not so interpret the contract. The current year referred to in the contract for

5. SAME: discharge of surety: premature payments.

the payment of the second $25,000 in warrants was the year in which the contract was to be completed; that is, the next year after that in which the contract was made. There is nothing to indicate that the second payment of $25,000 was to be postponed until the completion of the bridge, for it was expressly specified that payments to be made in warrants might be made before the final completion of the work as partial estimates. The city might properly have issued the full amount of warrants prior to September, 1908, and before it was known whether the bridge would be completed in accordance with the contract or not, and the fact that it should subsequently appear that the work was not completed in September would not have affected the validity of the warrants thus issued. Without regard to the particulars as to when the warrants issued after April 1st on the bridge fund of the current year were in fact issued, it is plain that under the provisions of the contract they were authorized and the surety company has no ground of complaint as to premature payment to the bridge company.

But there is another consideration which effectually disposes of the surety company's complaint in regard to the modification of the contract and the extension of time by the city. The judgments against the surety company were in favor of material-

6. SAME.

men for whose benefit the bond was specifically executed. It is conceded by the surety company that under the bond it became directly bound for the debts of the bridge company to materialmen, and that suits were properly instituted against it by the various claimants whose proper demands had not been met by the contractor. Therefore no action of the city taken after the accruing of claims by subcontractors or materialmen or without their knowledge would release the surety company from its liability to them. *Hipwell v. National Surety Co.,* 130 Iowa, 656,

670; *Read v. American Surety Co.,* 117 Iowa, 10; *White-house v. American Surety Co.,* 117 Iowa, 328. The city has not secured any judgment against the surety company, and therefore the company is not in a situation to take advantage in any respect of its claim that there was an unauthorized modification of or premature payment under the contract by the city.

III.   The Jewett Lumber Company on January 23, 1909, filed its claim with the city for $2,077.25 for material furnished to the Marsh Bridge Company and used in the construction of the bridge. The lower court with reference to this claim found as a matter of fact that the last item of the account was furnished December 30, 1908, and ordered the amount of said claim with interest to be paid by the city out of the $18,000 in bridge certificates retained to be delivered to the bridge company only on the completion of the bridge, and decreed that by way of supplemental relief the Jewett Lumber Company have judgment against· the surety company for the amount of its said claim. The complaint of the surety company with reference to this specific judgment is answered by what has already been said to. the effect that, irrespective of any claim which materialmen may secure against the fund due to the contractor remaining in the control of the city, the surety company is directly liable to the materialmen under its bond. But the trustee in bankruptcy of the bridge company complains of this judgment for two reasons: First, that the statement of the claim that was furnished to the city did not show that the last item of the account for material furnished was within thirty days of the date of filing its claim, as required by Code, section 3102, as a condition to the establishment of a claim by a materialman against a public corporation in the construction of a public bridge or other improvement; and, second, that the court should have declared the obligation of the surety

company to this materialman under its bond to be the primary liability with the right to the materialman if any he had to resort to the city for payment out of the $18,000 in reserve certificates only in the event that the claim was not paid by the surety company.

As to the question of fact, it appears that the statement filed with the city was ambiguous with reference to the dates on which several of the last items of material included therein were furnished and the sworn claim itself to which a copy of the account was attached indicated only in a general way that the materials referred to therein were furnished between October 30, 1908, and January 19, 1909. The evidence was, however, without controversy that several of the last items were in fact furnished within thirty days of the filing of the statement. The sufficiency of the statement as entitling the lumber company to a claim against the city for the full amount of its account payable out of the funds remaining undisbursed was in no way questioned save by an objection to the evidence offered showing the actual dates on which the last items were furnished; this objection being made on the ground that the statement as filed was conclusive. We have held in previous cases that such a statement is not conclusive, and that parol evidence is admissible to show the actual facts. *Bangs v. Berg*, 82 Iowa, 350; *Johnson v. Otto*, 105 Iowa, 605. If, in reliance on the apparent insufficiency of the statement, any party in interest had. been put in a worse position, no doubt the claimant would be precluded from showing the facts as against the statement of his claim; but the only controversy in this respect is between the trustee of the bridge company and the claimant, and it does not appear in any way that the trustee will be prejudiced by allowing the lumber company to establish its claim against the city.

As a matter of law, the lumber company was entitled

7. MECHANIC'S LIENS: sufficiency of statement: conclusiveness.

to payment out of the $18,000 in bridge certificates re-

**8. SAME: sub-contractors: enforcement of claims.** served by the city and this is its primary right. The court did not err therefore in decreeing such payment and rendering a conditional judgment only as against the surety company.

The claim of the Garver Hardware Company for $113.75 with interest is in the same condition as that of the Jewett Lumber Company, save that there is no controversy as to the filing of its statement with the city within thirty days after the furnishing of the last item as shown by such statement. The decree of the lower court in making this claim payable primarily out of the $18,000 reserved by the city in certificates with a supplemental and conditional judgment against the surety company in case the claim is not thus satisfied was correct.

The fact that these two claims were also filed in the bankruptcy court against the estate of the bridge company and there allowed seems to us to be wholly immaterial.

**9. SAME: effect of filing claims in bankruptcy.** The fact that the trustee in bankruptcy must pay these claims out of any assets of the estate in his hands in the event they are not paid by the city can not affect the validity of the judgment in this respect either as against the city or the surety company. The city makes no complaint of the order of the court requiring payment to be made out of the reserve fund.

IV. Some claimants have appealed from the provisions of the decree denying them judgments against the city payable out of the reserve fund of $18,000 in certificates. As all these claimants were given judgment against the surety company, their rights against the city may not be very material. Their contentions can be disposed of without great elaboration.

The Wheeler Lumber, Bridge & Supply Company presented its claim to the city for $9,713.85, but the court refused to enter judgment in its favor against the city on

the ground that the claim was not filed within thirty days after the furnishing of the last item of materials, as required by Code, section 3102, in order to entitle a subcontractor or materialman to payment by the city out of funds not already paid the contractor in accordance with the terms of the contract. Counsel for the Wheeler Company concede that the claim was not filed within thirty days after the furnishing of the last item of material to the Marsh Bridge Company, but they contend, first, that the relation of the materialman to the contract was preserved by subsequently furnishing other material of like character to the trustee in bankruptcy, who proceeded to complete the contract in behalf of the bridge company; and, second, that the Wheeler Company had no reason to suppose that it would not continue to furnish material to the bridge company until more than thirty days after the last item of materials was actually furnished by it, and therefore was not in default as to the filing of its claim within due time. The statute above referred to is not a portion of the mechanic's lien law, and does not create any lien as against a public corporation constructing a work of public improvement in favor of a subcontractor or materialman. It merely provides a method by which the subcontractor or materialman may acquire a right to be paid by the public corporation out of such portion of the contract price as has not been paid to the contractor in accordance with the terms of the contract. The public corporation is under no obligation to protect the subcontractor or materialman in such cases until such a statement as is required by the statute is filed within the time specified. *Green Bay Lumber Co. v. Independent School District*, 125 Iowa, 227; *Whitehouse v. American Surety Co.*, 117 Iowa, 328. It is not contended that the Wheeler Company had any continuing contract with the bridge company under which it was obligated and entitled to furnish material in the construc-

*10. SAME: rights of material men: revivor.*

tion of the bridge. Its claim against the city could be
predicated only on material already furnished at the time
its statement was filed; and, as this filing was more than
thirty days after the furnishing of the last of the material
for which claim was made in such statement, no obligation
to it on the part of the city has ever arisen.

The fact that the material was subsequently furnished
to the trustee of the bridge company in the completion of
the bridge can have no bearing on the case. No claim
therefor was made or could have been made in the state-
ment filed, and no claim therefor was ever made in any
subsequent statement. Indeed, the material furnished to
the trustee in bankruptcy has not been a subject of con-
troversy in this action as between the Wheeler Company
and the city, or between the Wheeler Company and the
surety company.

As no obligation on the part of the city to the Wheeler
Company ever arose or existed, the Wheeler Company
can not complain of the action of the city in making pay-
ments to the bridge company prematurely or otherwise
than as provided in the contract. The court did not err
in refusing to render a judgment in favor of the Wheeler
Company as against the city.

The Brown-Hurley Company filed a claim against the
city for $748.90 for material furnished the bridge com-
pany, including lanterns, sledges, handles, chisels, axes,
bolts, washers, etc., used by the bridge com-
pany in carrying on its work, but not actu-
ally used in the completed bridge or in the
falsework thereunto pertaining; and the trial
court refused to render a judgment against the city for
these items of the claim on the ground that they did not
come within the provision of Code, section 3102. That
section authorizes claims to be filed against public cor-
porations by subcontractors or materialmen who shall per-
form labor upon or furnish materials for the construction

11. SAME:
articles not
incorporated
in structure:
tools, etc.

of any public bridge, etc.   We think it is well settled that
a materialman does not acquire a mechanic's lien for ma-
terial of this character furnished to a contractor in con-
nection with the construction of a building or other im-
provement upon land.   *Standard Oil Co. v. Lane*, 75 Wis.
636 (44 N. W. 644, 7 L. R. A. 191); *Lowe v. Abraham-
son*, 18 N. D. 182 (119 N. W. 241, 19 L. R. A. (N. S.)
1039); *Mohr v. Clark*, 3 Wash. T. 440 (19 Pac. 28);
*Richmond, etc., Construction Co. v. Richmond R. Co.*,
31 U. S. App. 704 (68 Fed. 105, 15 C. C. A. 289, 34
L. R. A. 625); *Penna. R. Co. v. Leuffer*, 84 Pa. 168
(24 Am. Rep. 189).

   With much less reason can it be claimed that one who
furnishes the tools with which a contractor erects a public
improvement is entitled to a lien against the public cor-
poration for which the improvement is erected under the
statute providing for such a claim for furnishing "the ma-
terial for the construction" of the improvement.   Certainly
the city could not under any circumstances be subjected
to the payment out of the contract price or otherwise for
the working equipment procured by the contractor and
used by him in carrying on the work.   It can not be as-
sumed that the contract price for the work covered as a
part of the cost the purchase of the working equipment
which might have been previously used or might be subse-
quently employed by the contractor in carrying on other
work of like character.   The trial court did not err, there-
fore, in refusing to render a judgment against the city in
favor of the Brown-Hurley Company for these items.   The
Globe Machinery & Supply Company presented a claim
against the city for labor and material furnished the bridge
company in the form of equipment or repairs, and used
by the said bridge company in the performance of its con-
tract.   What has already been said as to the claim of the
Brown-Hurley Company is sufficient to show that the
Globe Company was not entitled to a judgment against

the city, and that the court did not err in refusing to render such judgment.

V.   The final contention for the surety company is that the aggregate of the judgments rendered against it exceeds by more than $2,000 the amount of its liability as fixed by the bond, and that in any event the judgment rendered in the decree against the surety company and in favor of the trustee of the bridge company of $3,977.33 is wholly unauthorized, because the trustee, standing in the shoes of the bridge company, can not have any redress on the bond against the surety.   The ground for such judgment in the lower court was that the trustee elected to complete the bridge in order to become entitled to the certificates reserved by the city in a total amount of $18,000 which were to be delivered to the bridge company only on final completion of the bridge and satisfaction of all claims of subcontractors and materialmen who might have perfected their right to share in this fund by filing proper claims against the city.   It appears that the cost of completing the bridge exceeded the amount of the reserve fund available in the hands of the city after the satisfaction out of the reserve certificates of the claims of the Jewett Lumber Company and the Garver Hardware Company.   Unfortunately counsel for the trustee has given no direct attention in argument to this contention of the surety company, but we are unable to understand on what theory the surety company can be held liable to the trustee.   The bankrupt estate of the bridge company will be applied by the bankruptcy court to the satisfaction of all proper claims filed before it, not only claims of subcontractors and materialmen with reference to this bridge, but the claims of other creditors of the bridge company.   If this estate satisfies the claims of subcontractors and materialmen with reference to this bridge, so far as such claims are filed in the bankruptcy court, there will be no liability to such

12. BANKRUPTCY: liability of an insolvent's sureties.

subcontractors or materialmen on the part of the surety company; and this will be true whether such claims are satisfied out of the reserve fund held by the city and constituting a part of the assets of the bridge company or otherwise. The theory of the trustee seems to be that there is some primary liability on the part of the surety company with reference to the claims of subcontractors and materialmen, and that, when these are satisfied, the surety company would then become a creditor of the estate of the bridge company. In the nature of things this can not be so. It is, of course, true that so far as the surety company does in fact satisfy claims of subcontractors and materialmen in connection with the performance of the contract by the contractors it becomes a creditor of the bankrupt estate, but until it has in fact satisfied such claims those claims are primarily payable by the contractor or out of his estate. We fail to understand any theory of subrogation which would require the circuitous process of primary enforcement against the surety company with subrogation against the principal debtor. Subcontractors and materialmen might perhaps have brought about the occasion for subrogation by enforcing their claims directly against the surety company under its bond, but surely the trustee in bankruptcy of the bridge company can not bring about such a situation. We reach the conclusion on this branch of the case that the trustee of the bridge company did not show himself entitled as trustee to any judgment against the surety company, and that such judgment in his favor in the amount of $3,977.33 is erroneous. Deducting this amount from the total amount of judgments rendered against the surety company, we find that it has not been held liable in this decree for more than the obligation of its bond.

With the modification indicated in the last division of this opinion, we find the decree of the lower court to

be correct and in all other respects than that pointed out
it is affirmed. *Modified* and *affirmed.*

## SUPPLEMENTAL OPINION.

TUESDAY, OCTOBER 24, 1911.

McCLAIN, J.—In a petition for rehearing in behalf
of the Brown-Hurley Hardware Company and the Globe
Machinery & Supply Company, our attention is called to
the fact that on the cross-appeals of these two companies
we have failed to notice the contention that the trial court
erred in not rendering judgment against the Empire State
Surety Company on its bond in the full amount claimed
by them, respectively.

As to the Brown-Hurley Company, the record shows
that, while the entire amount of its claim was $748.90,
$257.66 of that amount was for material and supplies
13. PUBLIC IM-  furnished to the Marsh Bridge Company and
PROVEMENT:
contractor's  actually used in the completed bridge or the
bond: liability
of surety.  falsework thereunto pertaining, while the bal-
ance of the claim was for labor and material furnished
to said contracting company in the form of equipment
or repairs thereto used in the performance of the con-
tract, but not going into the completed bridge or the
falsework. The entire claim of the Globe Machinery
& Supply Company was for material furnished in
the form of equipment or repairs thereto. The court
rendered judgment in favor of the Brown-Hurley Com-
pany against the Empire State Surety Company on its
bond for $265.39, being the amount of the items for ma-
terial and supplies which went into the completed bridge
or into the falsework with a small addition of interest,
and disallowed, as against the surety company, the balance
of its claim and the entire claim of the Globe Machinery
& Supply Company. In the contract between the Marsh

Bridge Company and the city of Des Moines for the construction of the bridge, the former agreed to pay all just claims against it for material furnished in the performance of the contract, and in the bond of the Empire State Surety Company furnished by the bridge company to the city in accordance with the terms of the contract the Empire State Surety Company became bound to pay all claims for labor and material furnished for said work.  The contention is that the claims disallowed were for material furnished the bridge company, which was so furnished to enable that company to perform its contract.  The lower court, however, drew a distinction between material which went into the completed bridge or into the falsework which was erected in the construction of such bridge and destroyed on its completion and the material and supplies which became a part of the machinery and equipment used by the bridge company in the construction of the bridge. This distinction was, we think, well taken.  It is recognized in cases relating to mechanics' liens and contractors' bonds.  While material furnished and consumed in prosecuting the work is included, such as powder for blasting and lumber employed in constructing falsework or scaffolding (*Schaghticoke Powder Co. v. Greenwich, etc., R. Co.,* 183 N. Y. 306 (76 N. E. 153, 2 L. R. A. (N. S.) 288, 111 Am. St. Rep. 751); *Hercules Powder Co. v. Knoxville, L. & J. R. Co.,* 113 Tenn. 382 (83 S. W. 354, 67 L. R. A. 487, 106 Am. St. Rep. 836); *Giant Powder Co. v. Oregon P. R. Co.* (C. C.), 42 Fed. 474 (8 L. R. A. 700); *Rapauno Chemical Co. v. Greenfield & N. R. Co.,* 59 Mo. App. 6), machinery, tools and equipment, constituting the plant, and material furnished for additions to and repair thereof, are not included (*American Surety Co. v. Lawrenceville Cement Co.* (C. C.), 110 Fed. 717; *Basshor v. Baltimore & O. R. Co.,* 65 Md. 99 (3 Atl. 285); *United States v. City Trust, etc., Co.,* 23 App. D. C. 155).  There is conflict in the authorities as to coal

and lubricating oil consumed in the operation of the machinery. *United States v. City Trust, etc., Co.,* 21 App. D. C. 369; (*Id.,* 23 App. D. C. 153); *Zipp v. Deposit Co.,* 73 App. Div. 20 (76 N. Y. Supp. 386); *Beals v. Fidelity & Deposit Co.,* 76 App. Div. 526 (78 N. Y. Supp. 584); *City Trust, etc., Co. v. United States,* 147 Fed. 155 (77 C. C. A. 397). There is nothing in the contract nor in the bond to indicate that the surety company was to become bound for indebtedness contracted by the bridge company in procuring the necessary machinery and equipment for carrying out its contract, nor for repairs necessary to maintain such machinery and equipment. The contract was primarily between the bridge company and the city of Des Moines, and in such contract the bridge company obligated itself to protect subcontractors and materialmen, but we can not interpret the contract as having any relation to obligations entered into by the bridge company in connection with its machinery and equipment. We reach the conclusion, therefore, that the lower court did not err in refusing to enter judgment against the surety company for that portion of the Brown-Hurley Company's claim and the amount of the claim of the Globe Company which were for additions to and repairs on such machinery and equipment.

It is said in argument that the claims now under consideration are of the same character as the claim of the Wheeler Lumber, Bridge & Supply Company for which judgment was rendered against the surety company; but this contention is not supported by the record. The stipulation as to the claim of the Wheeler Company recites that it furnished the bridge company with lumber and piling which was used for falsework in the construction of the bridge under the contract and specifications therefor, and there is nothing in the stipulation to indicate that any of the material furnished by the Wheeler Company was for machinery or equipment or for the repairs thereto. The

claims are distinguished, therefore, by the considerations already pointed out.

There is also a petition for rehearing on behalf of Moss as trustee for the bridge company, in which it is contended that in allowing the claims of the Garver Hardware Company and the Jewett Lumber Company against the city and directing them to be paid out of the reserve fund of $18,000 retained by the city, an injustice had been done to the general creditors of the bankrupt estate. Without further elaboration on this question, we are satisfied to adhere to the general position indicated in the original opinion to the effect that the trustee in bankruptcy is in no situation to claim any preference to this $18,000 reserve fund. He is entitled only to so much of it as is not properly exhausted in the payment of claims which had accrued before the bankruptcy. He did not acquire a right to this reserve fund as a purchaser without notice of claims against it, nor was he entitled to any preference. Counsel for the trustee reargue some of the questions which were briefly disposed of in the original opinion. We think a further elaboration of our views to be unnecessary, and are content to adhere to the conclusions already reached.

Both petitions for rehearing are *overruled*.