NEBRASKA CULVERT & MANUFACTURING COMPANY, Appellant, v. J. A. FREEMAN et al., Appellees.

**BONDS:** Construction—Depreciation on Machinery. A bond conditioned to perform a contract and to satisfy all claims incurred for the same and to pay all persons having contracts with the principal contractor or subcontractors for labor or materials, given under a contract guaranteeing the payment of all just claims for "material, supplies, tools, and labor" against the contractor or any subcontractor, does not embrace a claim for the *depreciation in value of machinery purchased by a subcontractor* and used solely on the work called for by the contract.

**BONDS:** Construction—Bond in Excess of Statute. Liability may not be predicated upon those terms and conditions of a bond which are beyond the requirements of the statute.

*Appeal from Wapello District Court.*—F. M. HUNTER, Judge.

APRIL 1, 1924.

ACTION on a bond given by a road contractor, who was not a party to the bond, to recover damages for depreciation in value of machinery purchased from plaintiff by a subcontractor, and used in building a road. Demurrers to the petition as amended were sustained. Plaintiff appeals.—*Affirmed.*

*Chester W. Whitmore,* for appellant.

*Merrow & Murphy,* for appellees.

ARTHUR, C. J.—I. In April, 1922, defendant Lamoreaux Brothers Company entered into a contract with Wapello County, Iowa, to do the grading on Sections A and B, Federal Aid

1. BONDS: con-         Project No. 159, known as the "Airline Road,"
struction: de-       running west from Ottumwa to Albia. A bond
preciation on
machinery.           was given by Lamoreaux Brothers Company,
with defendant Fidelity & Deposit Company of Maryland as
surety. Lamoreaux Brothers Company sublet a portion of said
work to defendant J. A. Freeman, a road contractor. Freeman
brought his equipment and began work in June, 1922, and con-
tinued working thereon until August 21, 1922, when he quit
said work and disappeared from the state, and has not been
heard of by parties to this action since. To carry on the work,
Freeman purchased from plaintiff, appellant, grading equipment
consisting of:

One New Era Sr. Elevating Grader.............$1,375.00
Eight 1½ yard "Western Contractor's" bottom
    dump wagons ........................... 1,936.00
Two 4 yard "Western Mogul" dump wagons.... 1,030.00

               Total              $4,341.00

    Upon the disappearance of Freeman from the state of Iowa,
this action was brought, aided by attachment. Freeman paid
nothing on the purchase price of the equipment. Notice by pub-
lication was made on Freeman. The attachment was levied on
the equipment above described. In October, default judgment
*in rem* was entered against Freeman, and the above described
tools were sold under special execution on November 25, 1922.
The amount realized from said execution sale was $1,918. Said
grading tools were used only on this job. Thereupon, on No-
vember 25, 1922, plaintiff filed an amendment to petition, alleg-
ing that $1,918 had been realized by sale of the attached prop-
erty; that the cost, new, and the fair and reasonable value, new,
of the equipment purchased by Freeman from plaintiff was
$4,341, as set forth in the original petition; that the difference
between the original cost, the value of the equipment, and the
amount realized by sale of said equipment, $2,436, "represents
the fair and reasonable rental value of said equipment during
the time it was used by J. A. Freeman on said 'Airline Road,'
and represents the depreciation in value of such equipment
during the time it was used on said job, and represents the fair

and reasonable value taken out of such equipment and merged into said Airline Road (Federal Aid Project No. 159); and that said road has been enhanced in value to the extent of said $2,423, by reason of the rental value and of the depreciation in value of said equipment during the time it was used on said job; that none of said equipment has been used on any work other than said Airline Road in Wapello County; that said $2,423 is a just claim and demand, within the covenants of the bond Exhibit B, involved.''

The demand was for judgment against defendants, and each of them, in the sum of $2,423, with interest and costs.

II.   The petition sets forth specifications for the work, and the bond given for the performance of the work. The specifications, among other things, provide:

''It is understood that the contractor for all or any part will furnish all labor, materials, tools, transportation and necessary supplies required under the terms of this contract;'' and ''the contractor guarantees the payment of all just claims for material, supplies, tools, labor, and all other just claims against him, or any subcontractor, in connection with this contract, and his bond will not be released by final acceptance and payment by the board unless all such claims are paid or released.''

The bond provides:

''Now, therefore, the condition of this obligation is such that: if the principal shall faithfully perform the contract on his part, and satisfy all claims and demands, incurred for the same, and shall fully indemnify and save harmless the owner from all cost and damage which he may suffer by reason of failure to do so, and shall fully reimburse and repay the owner all outlays and expense which the owner may incur in making good any such default, and shall pay all persons who have contracts directly with the principal or subcontractors for labor or materials, then this obligation shall be null and void; otherwise it shall remain in full force and effect.''

Lamoreaux Brothers Company and the Fidelity & Deposit Company of Maryland, defendants, filed separate, but like, demurrers to the petition as amended. In substance, the demurrers stated: (1) That defendants are not liable under the general law of liens or any specific law of liens in the state of Iowa;

that, under the specifications and the bond, defendants are not liable; that a cause of action does not exist in favor of plaintiff and against defendants, based upon statute or under the terms of the contract between Lamoreaux Brothers Company and Wapello County; (2) that no privity of contract is pleaded by plaintiff; (3) that defendants are not liable to plaintiff for depreciation in value, wear and tear, repair, or rental value of said equipment used in construction of said road, under the pleadings in this case, under the contract, or under the laws of the state of Iowa.

III.    Plaintiff's demand in amendment to petition is based upon and is for "the fair and reasonable value taken out of such equipment and merged into said Airline Road, Federal Aid Project No. 159; and that said road has been enhanced in value to the extent of such $2,423 by reason of the rental value and of the depreciation in value of said equipment during the time it was so used on said job."

Plaintiff bases its cause of action upon said claim in connection with a portion of the bond reading:

"If the principal shall faithfully perform the contract on his part, and satisfy all claims and demands, incurred for the same, * * * and shall pay all persons who have contracts directly with the principal or subcontractors for labor or materials, then this obligation shall be null and void; otherwise it shall remain in full force and effect."

It alleges that the contract and bond are those required under Chapter 347, Acts of the Thirty-eighth General Assembly, requiring that a bond be given, covering "all persons who have contracts directly with the principal for [or] subcontractors for labor or materials." The demurrer challenges the plaintiff's right of recovery under the allegations of the petition and the amendment thereto. The question presented by the demurrer is, Do the contract and bond obligate defendants Lamoreaux Brothers Company and its surety, the Fidelity & Deposit Company, to pay for, as plaintiff states it, "the fair rental value thereof [the equipment purchased and used by Freeman] represented by the depreciation while used solely on this job in question and covering only the value thus taken out of them and merged into the road?"

IV.   Counsel for appellant asserts in argument that plaintiff is not suing under the statute, Code Section 3102, nor does it rely on Chapter 347, Acts of the Thirty-eighth General Assembly, but relies upon the conditions of the bond, which it claims are broader than required by said statutes, requiring Lamoreaux Brothers Company and its surety, the Fidelity & Deposit Company, "to faithfully perform the contract, satisfy all claims and demands for same, * * * and pay all persons who have contracts directly with the principal or subcontractors for labor or materials." It is not claimed by plaintiff that the bond would be liable for the original purchase price of the equipment bought by Freeman from it, because, as plaintiff says, "all their value would not go into this Airline job; after such road is completed, it is probable some or all of these tools can still be used on other jobs. Hence, the reasoning of the case runs, it would not be fair to charge this particular job with all the cost, which in such way spreads over several different undertakings. But to the extent of the $2,423 depreciation established by original purchase and by sale, while still in use, under such purchase, on this same job, plaintiff has lost every dollar of the $2,423. And every dollar of that value has gone into this Airline Road,—no place else. To such extent the Airline Road has profited by plaintiff's loss; the $2,423 is part of the legitimate cost of such road,—a 'just debt,' 'demand,' within the meaning of condition of the bond involved."

V.   The demurrers presented the propositions: (1) That neither the purchase price nor the value of the equipment bought by Freeman nor the rental value thereof nor depreciation thereof by use on the job in question comes within the purview of Code Section 3102 or any other statute of Iowa; (2) that the terms of the contract and bond do not confer right of action by plaintiff against defendants; (3) that there is no privity nor contractual relation between plaintiff and defendants upon the bond.

Plaintiff says it is not suing under any statute, but is suing under the condition of the bond requiring Lamoreaux Brothers Company and their surety, Fidelity & Deposit Company, "to faithfully perform the contract, satisfy all claims and demands for the same, * * * and to pay all persons who have contracts

directly with the principal or subcontractors for labor or materials.'' Counsel for appellant strenuously urges that the conditions of the bond are broader than the statutes, and are not limited by the statutes; and that Code Section 3102 and the holding thereunder in *Empire State Surety Co. v. City of Des Moines*, 152 Iowa 531, are not controlling as to the liability of defendants on the bond; that the liability of defendants is to be determined, not under said statute, but under the covenants of the bond relied upon, and specifically challenged by statement in the demurrer that ''no privity of contract exists between plaintiff and defendants,'' and also challenged by the ground of the demurrer ''that defendants are not liable to plaintiff for depreciation in value, wear, and tear, repair or rental value of said equipment used in the construction of said road, under pleadings in this case, under the contract, or under the laws of the state of Iowa.''

Appellant urges that the contract and bond in question, drawn and conditioned to pay all just claims, not only for ''material or labor for construction of highways,'' but ''all just claims for material, supplies, tools, labor, and all other just claims filed'' against either the contractor or subcontractor, were designed and intended for the purpose of protecting, with others, those who furnished equipment to the contractors, like plaintiff.

The particular question presented to us on this appeal, as argued by counsel for plaintiff, is whether or not the provisions of the bond, above set forth, protect and furnish right of action to plaintiff for the fair and reasonable rental value and depreciation of said equipment while used in construction of the road. In other words, plaintiff claims that the very provisions of the bond afford a right of action outside of the statutes. Plaintiff further insists that the bond sued on was given under and must be governed by Chapter 347, Acts of the Thirty-eighth General Assembly, rather than by Code Section 3102; that said act is ''additional'' to Code Section 3102; and that the paragraph of the specifications forming part of the contract relied upon by appellant, and the bond in question, expressly require payment for ''tools'' furnished subcontractor Freeman, as well as ''all other just claims against him,'' which appellant claims includes

the rental value of the equipment purchased by Freeman. Plaintiff filed an itemized and verified statement of claim, which was the basis of action in amendment to petition, with the auditor of Wapello County, in compliance with Section 2 of said Chapter 347, providing that ''any person for whose benefit the bond is given, or his assigns, may bring an action on such bond for the recovery of such indebtedness.'' Appellant insists that said provision of said Section 2 is a complete answer to the challenge of the demurrer that there was no privity of contract between plaintiff and defendants Lamoreaux Brothers Company and Fidelity & Deposit Company; and that the court erred in sustaining such ground of the demurrer by holding, in effect, that plaintiff had no right of action on the bond. Plaintiff insists that it is one of those for whose benefit the statute required the bond to be executed, and that such statute expressly conferred the right of ·action upon it. Appellant relies upon the holding in *Haakinson & Beaty Co. v. McPherson,* 182 Iowa 476, in support of its position. The holding in that case does not support the contention of plaintiff that there existed privity of contract between it and defendants. There was no contractual relation existing between plaintiff and defendants. True, the bond provided that the contractor, the Lamoreaux Brothers Company, should ''pay all persons who have contracts directly with the principal or subcontractor for labor or materials.'' But there is no provision in the bond for, and by no fair implication can the bond be interpreted to include, payment for equipment bought by the subcontractor Freeman, or for the rental value or depreciation of the equipment by use in the construction of the road. The contract and bond on which this action is based are under Chapter 347, Acts of the Thirty-eighth General Assembly. In said act, regarding the bond, is the following paragraph:

''Now, therefore, the condition of this obligation is such that if the principal shall faithfully perform the contract on his part, and satisfy all claims and demands, incurred for the same, and shall fully indemnify and save harmless the owner from all cost and damage which he may suffer by reason of failure so to do, and shall fully reimburse and repay the owner all outlay and expense which the owner may incur in making good any

such default, and shall pay all persons who have contracts directly with the principal for subcontractors for labor or materials, then this obligation shall be null and void; otherwise it shall remain in full force and effect."

The contract and bond in the instant case are identical with the contract and bond involved in *Empire State Surety Co. v. City of Des Moines, supra.* In that case we said:

"There is nothing in the contract nor in the bond to indicate that the surety company was to·become bound for indebtedness contracted by the bridge company in procuring the necessary machinery and equipment for carrying out its contract, nor for repairs necessary to maintain such machinery and equipment. The contract was primarily between the bridge company and the city of Des Moines, and in such contract the bridge company obligated itself to protect subcontractors and materialmen, but we cannot interpret the contract as having any relation to obligations entered into by the bridge company in connection with its machinery and equipment. * * * With much less reason can it be claimed that one who furnishes the tools with which a contractor erects a public improvement is entitled to a lien against the public corporation for which the improvement is erected, under the statute providing for such a claim for furnishing 'the material for the construction' of the improvement. Certainly the city could not, under any circumstances, be subjected to the payment out of the contract price or otherwise for the working equipment procured by the contractor and used by him in carrying on the work. It cannot be assumed that the contract price for the work covered as a part of the cost the purchase of the working equipment which might have been previously used or might be subsequently employed by the contractor in carrying on other work of like character."

Appellant cites and especially relies upon decisions in *Multnomah County v. United States Fid. & Guar. Co.,* 87 Ore. 198 (170 Pac. 525), and *Puget Sound St. Bank v. Gallucci,* 82 Wash. 445 (144 Pac. 698). In the Oregon case, the subcontractor actually rented an engine in carrying on the work. In that case, the subcontractor agreed in the contract and bond "to furnish all material, tools, and equipment and all labor," conditioned that he should pay all subcontractors and laborers, materialmen,

and all persons who should supply laborers or subcontractors with materials or supplies. The Oregon court held in that case that the owner of the engine was a subcontractor. The engine was actually rented, under a rental contract. The contract and bond in said case are broader than the contract and bond in the case at bar. Said contract in part reads as follows:

"The contractor further agrees that any person who supplied labor or material for the prosecution of any work provided for under this contract is hereby authorized to institute an action against said contractor or his sureties on his own relation in the name of the county, and to prosecute the same to final judgment for his own use and benefit. The contractor further agrees that all the provisions of the laws of the state of Oregon applicable to the protection of subcontractors, materialmen, and laborers engaged in carrying out the terms of this contract are hereby made a part of this contract, whether expressly incorporated herein or not."

The bond in said case read as follows:

"Now, therefore, if the said principal herein * * * shall faithfully and truly observe and comply with the terms, conditions and provisions of the said contract, in all respects, and shall well and truly and fully do and perform all and singular the covenants, conditions, guaranties, matters and things by it agreed, covenanted and undertaken to be performed under said contract, plans and specifications, upon the terms proposed therein, * * * and shall indemnify and save harmless the county of Multnomah, * * * and shall promptly pay all laborers, mechanics, subcontractors and materialmen, and all persons who shall supply such laborers, mechanics or subcontractors, with materials, supplies or provisions for carrying on such work, all just debts, dues, and demands incurred in the performance of such work, * * * then this obligation to be void; otherwise to remain in full force and effect."

Among other things, the Oregon court said:

"The statute should not be extended to include the use of material not intended to be protected by it or by the contract and bond, such as claims for the purchase of an engine, hoisting apparatus, or the like. * * * According to the strict legal definition of the term 'labor and material,' the use of the engine

would not be embraced therein. · 2 Words & Phrases (2d Series) 1321. There can be no question but that the service of the machine in the actual grading of the highway, as alleged in the complaint, is covered by the language of the contract and bond.''

It will be observed that the contract itself, in the Oregon case, authorizes an action to be prosecuted against a contractor and his sureties for any and all debts created by the contractor or subcontractors. This presents a different situation from the case at bar, and is not a parallel.

In the Washington case, the contract in part read:

''That the party of the second part (Gallucci) * * * will pay all just debts, dues and demands incurred in performance of said work.''

The bank loaned the contractor $32,000, which money was used in construction of the improvement. Before entering into the contract, the bank agreed with the contractor to furnish him,—loan to him,—from time to time, such sums as would be required by him to pay debts incurred in the construction of the improvement, under certain contracts about to be made. In pursuance of such agreement, the bank furnished the contractor sums of money from time to time, aggregating $32,000. When the work was completed, the contractor owed the bank some $18,000. The trial court found that the money loaned by the bank to the contractor was loaned for the purpose and with the understanding that it would be used in paying his debts incurred in the construction of the improvement, and that the money so loaned was paid out for labor performed upon and material used in the construction of the improvement. The contract provided, among other stipulations, ''that the party of the second part (Gallucci) * * * will pay all just debts, dues and demands incurred in performance of said work.'' The bond, among other things, provided:

''Shall faithfully perform all of the provisions of said contract in the manner and within the time therein set forth, and shall pay all laborers, mechanics, subcontractors and materialmen, and all persons who shall supply said principal or subcontractors with provisions and supplies for the carrying on of said work, all just debts, dues and demands incurred in the performance of said work.''

The court held, in substance, that the language of the contract and bond rendered the surety company liable to the bank upon the bond: that is, that the debt due from Gallucci to the bank was "incurred in the performance of said work." It will be observed that, in the Washington case, the loan made by the bank to the contractor was made upon reliance that the contractor and his bondsmen would be liable for said indebtedness; and the above quoted provisions of the contract and bond are, in substance, the conditions required by the Washington statute. Section 1 of the Act of 1909 (Remington & Ballinger's Code, Section 1159). We think that the Washington case does not assist in the solution of the problem before us in the instant case. The decisions in the Oregon and Washington cases are, under the statutes, contracts and bonds dissimilar to our statutes and unlike the contract and bond involved in the instant case. In the Oregon case, recovery was allowed for the actual rental of a caterpillar engine used by the contractor on the work. In the instant case, the equipment was not rented to Freeman. Freeman purchased said equipment without the knowledge or consent of defendants. It would seem that a road contractor or subcontractor, such as Freeman was, is presumed to have an outfit sufficient to perform the contract he enters into. Certainly, the price of the equipment which Freeman would bring upon and use upon the work, the rental value of such equipment, or the wear and tear of such equipment, were not contemplated or considered when Lamoreaux Brothers Company entered into the contract and bond with Wapello County. Certainly, the bid made for the work by Lamoreaux Brothers Company had no bearing on the purchase of equipment by a subcontractor, the rental value thereof, or wear and tear thereon; but the bid for said work was undoubtedly based solely upon the cost of the building of said road. There was no privity, no contractual relation, between plaintiff and defendants. As disclosed in the record, neither party, at the time of the execution of the contract and bond, knew of the existence of the other. It is only under the lien law that a third person can claim rights against the principal contractor: that is, the lien law gives to laborers and materialmen the contractual relationship or privity of contract between them and the principal contractor. A con-

tract can only bind the parties where the relationship exists in said contract between parties, either in contract or law creating privity.

Plaintiff claims that the contract and bond are broader than the statutes providing for liens, and that liability on the bond extends beyond that contemplated by the lien statutes, and that by such extension the liability for the rental value or depreciation of the equipment involved is covered by the bond. We think that, under a fair interpretation of the bond, liability thereunder extends only to materialmen and laborers, and not to the rental value or depreciation of the equipment purchased from plaintiff by Freeman. Indeed, there could not possibly be any rental value involved, because the equipment was not rented. Doubtless there was depreciation in the value of the equipment, but such depreciation was not the subject of contract between plaintiff and defendants, nor did depreciation in any way enter into the terms of the bond. The contract and bond are compulsory under our statute, and the contract and bond involved were executed in pursuance of the statute, and we think must be construed in the light of the statute.

The authorities are in conflict as to whether a bond which is given in compliance with a statute, but the terms of which are broader than required by the statute under which it is given, is enforcible as to additional provisions not required by the statute. We think that the bond involved in the instant case by its terms does not include liability for plaintiff's claim. But assuming, as contended by plaintiff, that the bond does include binding conditions and obligations not required by the statute, and is broader than the statute, this court is committed to the rule that liability may not be predicated upon provisions of a statutory bond which are broader than and beyond the requirements of the statute providing for the bond, and under which the bond is given. Such is the effect of our holding in *United States Fid. & Guar. Co. v. Iowa Tel. Co.*, 174 Iowa 476. The bond sued on in the instant case is a statutory bond, given under Chapter 347, Acts of the Thirty-eighth General Assembly. Liability may not be predicated upon the terms and conditions of a statutory bond which are beyond the requirements of the statutes.

2. Bonds: construction: bond in excess of statute.

We reach the conclusion that the plaintiff cannot maintain its action on the bond sued on, and that the surety on the bond is not liable on the claim sued on; that the demurrers to the petition as amended were properly sustained. Results in affirmance of the case.—*Affirmed.*

EVANS, PRESTON, and FAVILLE, JJ., concur.