THE SCHAGHTICOKE POWDER COMPANY, Appellant, et al. *v.* THE GREENWICH AND JOHNSONVILLE RAILWAY COMPANY, Defendant, and I. M. LUDINGTON, Respondent, Impleaded with Others.

1. MECHANIC'S LIEN — DYNAMITE, USED IN THE GRADING AND CONSTRUCTION OF A RAILROAD, IS A "MATERIAL" WITHIN THE MEANING OF THE LIEN LAW (L. 1897, CH. 418, § 3). Dynamite, furnished to and actually used by a sub-contractor for the purpose of blasting rock and breaking up earth in excavating for the grading and building of the roadbed of a railway, is a material within the meaning and contemplation of section 3 of the Lien Law (L. 1897, ch. 418), which provides that, "A contractor, sub-contractor, laborer or materialman, who performs labor or furnishes materials for the improvement of real property with the consent or at the request of the owner thereof, or of his agent, contractor or sub-contractor, shall have a lien  *  *  *."

2. SAME — MECHANIC'S LIEN MAY BE OBTAINED AGAINST RAILROAD FOR MATERIAL USED IN CONSTRUCTION THEREOF — MEANING OF TERM "REAL PROPERTY" AS DEFINED IN SECTION 2 OF THE LIEN LAW. A lien may be acquired against a railroad corporation for materials furnished and used in the construction of its railroad, since it is a fair construction of sections 2 and 3 of the Lien Law, when read together as component parts of one law, that any of the persons designated in the latter section may acquire a lien for the purposes therein named, and that the term "real property" shall not only include real estate, lands, tenements, hereditaments, corporeal and incorporeal, and fixtures, but, also, and in

addition thereto all bridges and trestle work and structures connected therewith for the use of railroads. The use of the words, "and all bridges and trestle work and structures connected therewith for the use of railroads," in section 2, for the purpose of defining the term "real property," denotes a legislative intent to enlarge, rather than restrict, the statutory meaning of that term as applied to the subject of mechanics liens, thereby removing the structures there mentioned from the realm of uncertain classification and placing them unmistakably in the category of real property.

*Schaghticoke Powder Co.* v. *G. & J. Ry. Co.,* 96 App. Div. 631, reversed

(Argued December 8, 1905; decided December 15, 1905.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered July 14, 1904, which affirmed a judgment entered upon a decision of the Washington County Court dismissing the complaint of the appellant herein in an action to enforce a mechanic's lien.

The facts, so far as material, are stated in the opinion.

*George W. Curry* for appellant. Mechanic's liens may be acquired against railway corporations for materials furnished and used in the construction and improvement of their real property. (L. 1897, ch. 418, § 3.) The materials furnished, viz., dynamite, fuses, caps and explosives, were materials used for the improvement of real property within the language and intent of the Lien Law. (L. 1897, ch. 418, § 3 ; *H. P. Co.* v. *Byrnes,* 21 How Pr. 189 ; *G. P. Co.* v. *O. P. R. R. Co.,* 42 Fed. Rep. 470 ; *H. P. Co.* v. *K., L. & J. R. R. Co.,* 83 S. W. Rep. 354 ; *R. C. Co.* v. *G. & N. R. R. Co.,* 59 Mo. App. 16 ; *K. M. Co.* v. *Gallagher,* 55 Col. 23 ; *G. P. Co.* v. *F. Co.,* 78 Cal. 193 ; *Zipp* v. *F. & D. Co.,* 73 App. Div. 20.) The statute should be liberally construed. (L. 1897. ch. 418, § 22 ; *Ruggles* v. *W. I. Works,* 149 N. Y. 439 ; *Ogden* v. *Alexander,* 140 N. Y. 360 ; *Bryson* v. *St. Helen,* 79 Hun, 169.)

*Clarence W. McKay* for respondent. There can be no lien for dynamite or powder used for blasting purposes under

the Mechanics' Lien Law. (*Hatch* v. *Coleman*, 29 Barb. 201; *Ward* v. *Kilpatrick*, 85 N. Y. 414; *Vogel* v. *Farrand*, 26 Misc. Rep. 130; *Campbell* v. *Yuengling*, 125 N. Y. 1; *N. I. M. Co.* v. *Upham*, 26 App. Div. 420; *Rinn* v. *E. P. Co.*, 3 App. Div. 305; *Schukraft* v. *Ruck*, 6 Daly, 1.) A mechanic's lien cannot be acquired against railroad corporations for materials furnished unless they are actually used in the construction of bridges and trestle work and structures connected therewith. (20 Am. & Eng. Ency. of Law [2d ed.], 269, 270; *Graham* v. *M. S. C. R. Co.*, 29 Am. Rep. 412; *G., etc., R. R. Co.* v. *Strang*, 77 Fed. Rep. 498; *Rutherford* v. *C., etc., R. R. Co.*, 25 Ohio St. 559; *B. C. Comrs.* v. *Tommey*, 115 U. S. 122; *P. S. Co.* v. *J. E. P. S., etc., Co.*, 63 Fed. Rep. 11; *I. G. Co.* v. *E. S. Co.*, 58 Fed. Rep. 732; *C., etc., R. R. Co.* v. *K. T. Co.*, 86 Fed. Rep. 73; *Fowler* v. *B., etc., Ry. Co.*, Sheld. 525; *Wick* v. *F. P. & R. S. R. R. Co.*, 27 App. Div. 577.)

Werner, J. The respondent Ludington entered into a contract with the defendant railroad company to construct an extension of its line between the villages of Greenwich and Schuylerville in this state, and, among other things, agreed to save the railroad company harmless from and against all valid liens that might be filed for work done under the contract. With the consent of the railroad company Ludington sublet a portion of the work, including the grading, to the defendants Inman & Fox, who purchased of the plaintiff, the Schaghticoke Powder Company, a quantity of dynamite for use in breaking up frozen earth so that it could be handled by means of a steam shovel that was employed by the sub-contractors in the grading and building of the roadbed. The dynamite thus furnished was actually used by the sub-contractors for the purpose mentioned, and the trial court found that it was furnished and used with the knowledge and consent of the defendants, the railroad company and Ludington; that no part of the same had been paid for and that the powder company had filed the usual notice of lien in compliance with

the terms of the statute.   The trial court further found " that the said materials so furnished by the plaintiff, The Schaghticoke Powder Company, were not materials used for the improvement of real property within the language or intent of the Lien Law, but the same were used merely as explosives principally to break up frozen earth so that it could be handled."   Upon this finding a judgment was entered dismissing the complaint as to the plaintiff powder company, and upon appeal to the Appellate Division that judgment has been unanimously affirmed.

Two questions are presented for our consideration upon this appeal :  1. Are the materials furnished by the appellant herein such as are contemplated by the provisions of the Lien Law ?   2. Can a lien be acquired against a railroad company for materials furnished and used in the construction of its road ?

It is obvious that we must look to the Lien Law for the answer to these questions.   Section 3 of that law (L. 1897, ch. 418 ; Gen. Laws, ch. 49), relating to mechanics' liens, provides that " A contractor, sub-contractor, laborer or materialman, who performs labor or furnishes materials for the improvement of real property with the consent or at the request of the owner thereof, or of his agent, contractor or sub-contractor, shall have a lien   *   *   *."   The railroad company, through its indemnitor, Ludington, has thus far successfully contended that the dynamite furnished by the appellant does not come within the definition of materials furnished as those terms are used in the statute.   The argument is that no lien can be acquired under this law for materials that do not go directly into and form a permanent part of some building or structure upon real estate, and that explosives used in blasting rock or breaking up earth are not such " materials " within the purview of the statute.   The position of the appellant is that the explosives used by the sub-contractor in breaking up earth which must be excavated or removed in the construction of the roadbed are " materials " used in the improvement of real estate within the fair and reasonable interpretation of the

language of the statute, and are as much a part of the work of improvement as the manual labor that goes into it.

The question thus presented is not free from difficulty, but after a careful consideration of the statute we feel constrained to hold that the position taken by the appellant is more logical and more in consonance with the evident purpose of the legislature than that taken by the respondent.

As bearing upon the construction of the statute, the history of legislation upon the subject of mechanics' liens and the report of the commissioners, whose revision resulted in the present Lien Law, are both interesting and instructive. In their report to the legislature the commissioners of revision said: " The underlying principle of all legislation of this character is that a person who, at the request or with the consent of the owner of real property, enhances its value by furnishing materials or performing labor for the improvement thereof, should be deemed to have acquired an interest in such property to the extent of the value of such materials or labor. This principle should be applicable generally to improvements of real property. It is not necessary, therefore, to detail the particular kinds of improvements for which the lien will exist, as has been done in the act of 1885. By defining the terms 'improvement,' 'owner,' 'real property,' etc., in a broad and comprehensive manner, it will be possible, by the use of such terms, to omit superfluous words and expressions formerly used to apply generally the principle above enunciated. * * * The article relating to mechanics' liens has been made so general in its scope as to include every case where labor is performed or material furnished for the permanent improvement of real property."

Beginning with the statute of 1869 (Ch. 558), which amended the earlier act of 1854, we observe that it gave a lien for the value of any labor and material performed and furnished in erecting, altering or repairing any house, building or the appurtenance to any house or building and upon the land upon which the same shall stand. Passing without comment the various local statutes of limited scope and effect enacted from

time to time thereafter, we come to the General Lien Law of
1885 (Ch. 342), which created liens for labor or services per-
formed or materials furnished and used, or to be used, in erect-
ing, altering or repairing any house, wharf, pier, bulkhead,
bridge, vault, building or appurtenance to any house, building
or building lot, including fences, sidewalks, paving, fountains,
fish ponds, fruit and ornamental trees.  When these statutes
are read in connection with the report of the commissioners
of revision made in presenting the Lien Law now in force to
the legislature, it becomes obvious that while the law of 1885
was much broader in scope than any of its predecessors, it was
not considered liberal enough to cover all the cases in which
labor performed or materials furnished resulted in the improve-
ment of real property, and thus contributed to the permanent
enhancement of its value.  It would be difficult to suggest
anything more comprehensive than the language used in the
present statute.  Any " contractor, sub-contractor, laborer or
materialman who performs labor or furnishes materials *for
the improvement of real property* " shall be entitled to a lien.
When this language is contrasted with the specific and
restricted phrases of the former statutes, it is plain that the
legislature intended to bring all labor performed or materials
furnished in the improvement of real estate, no matter by
what name they may be called or by what description they
may be designated, within the liberal and beneficent purposes
of the statute.  In this view of the statute we do not see why
the materials furnished by the appellant are not comprehended
within its terms.  It may be admitted that dynamite used in
blasting rock or breaking up earth does not, in a narrow and
technical sense, enter into and remain a part of the permanent
structure which contributes to the improvement of real estate.
The same thing may be said of the labor performed upon it.
But in a broad and practical sense explosives so used might
be said to partake of the nature of both materials and labor.
They can be regarded as materials in so far as they constitute
physical substances which are furnished and used in the per-
formance of the work for which they are designed; they

might also be considered as substitutes for labor to the extent that they contain a potential energy which takes the place of manual labor or mechanical appliances. But we go no further than to hold that explosives used in the doing of work for the improvement of real property are materials within the meaning of the statute. It is a familiar rule that in the construction of statutes their language must be adapted to changing conditions brought about by improved methods and the progress of the inventive arts. To deny to such a substance as dynamite used for such a purpose the attributes of materials, when there is nothing in the statute to require it, would be a backward step, since it would necessitate a recurrence to the cumbrous and ineffective method of enumerating in the statute everything that can be thought of to-day, at the risk of rendering it nugatory on the morrow because its language is not broad enough to keep pace with the march of development.

The argument that dynamite is not a material, but a part of the contractor's plant which, like picks and shovels or mechanical appliances, are used in the performance of work, but are not considered materials furnished within the purview of the statute, seems to us inherently unsound. A steam shovel, an engine and boiler, picks, shovels, crow-bars and the like, are tools and appliances which, while used in the doing of the work, survive its performance and remain the property of their owner. Not so, however, with materials that are used up in the performance of the work and are thereafter invisible except as they survive in tangible results. We think that explosives when used as substitutes for other recognized "materials" are covered by the same principle. They enter into and form a part of the permanent structure quite as much as the earth, rails, ties, culverts and bridges that we can see and feel. The question is not how far this principle may be extended by fanciful argument to matters which may have a very remote or indirect relation to real property upon which a lien is claimed, but whether under the broad and comprehensive language of the Lien Law, which is to be construed liberally to secure the beneficial interests and purposes thereof

(Sec. 22), explosives used as materials in blasting or excavating can fairly be made the basis for a lien.

The adjudications upon this subject in this and other jurisdictions are of little weight as actual authorities, since they are all based upon statutes differing in phraseology and scope from our own present Lien Law, but we refer to the reasoning in a few of them as quite applicable to the case at bar. In the case of *Hazard Powder Co.* v. *Byrnes* (21 How. Pr. 189) it was held that powder and fuse necessarily used by the contractor in blasting for the foundation of a building upon which the lien was claimed, were " materials in building" within the Lien Law of 1851. It is but fair to say, however, that there the contract imposed upon the builder the duty of removing rock from the surface of the land preparatory to laying the foundation walls, and that fact was given prominence in arriving at the decision. In *Giant Powder Co.* v. *Oregon Pac. Ry. Co.* (42 Fed. Rep. 470) the Federal Circuit Court held that powder used in the construction of a railroad fell within the designation of materials furnished under a lien law of Oregon, and in the course of the discussion used the following language : " This powder was not only ' used' in the construction of this road, but it was thereby necessarily consumed, and it was so intended. It was furnished to be so used in the construction of this road. Nice questions may arise as to whether material is ' used' in the construction of a road as a tool or plant simply, or so used and consumed as to entitle the furnisher to a lien on the result for its value. The food furnished a contractor for his workmen may be said to be ' used' and ' consumed' in the construction of the road on which they work, but this is only so in a remote and consequential way or sense. The food does not enter directly into the structure, and is not so used. Mason work may be done on a road in a dry country or season when large quantities of water must be hauled many miles for the preparation of the necessary mortar. Upon the completion of the structure and the hardening of the mortar, the water has as thoroughly disappeared as the powder after the blast. Again, lumber may be used in the

construction of a building for the purpose of scaffolding. However, it does not thereby literally enter into the composition of the building, nor, so to speak, become a part of it. But, in my judgment, both it and the water have been ' used' in the construction of the building and mason work, within the meaning of the Lien Law, and the purposes for which it was enacted. And so I think this powder was ' used ' in the construction of this section of the road, whereby it was consumed, not gradually and incidentally, as a tool or part of a contractor's plant, but wholly and at once, in aiding to clear and fit the roadway for the reception of the ties and rails."

To the same effect are *Hercules Powder Co.* v. *Knoxville, etc., R. R. Co.* (113 Tenn. 382) and *Rapauno Chem. Co.* v. *G. & N. Ry. Co.* (59 Mo. App. 11). While we do not subscribe to all that was said *arguendo* in the Oregon case (*supra*), the illustrations there used are pertinent as showing that the claim of the appellant at bar is fairly brought within the purview of our statute by a liberal and reasonable construction of its provisions.

Nothing said or decided in *Ward* v. *Kilpatrick* (85 N. Y. 414) or *Watts-Campbell Co.* v. *Yuengling* (125 id. 1) and the other cases cited by the respondent in support of his position seems to be in conflict with the views above expressed. These cases were decided under earlier statutes and upon facts that are clearly to be differentiated from those at bar.

We are also of the opinion that the question whether a lien can be acquired against a railroad corporation for materials furnished and used in the construction of its railroad must be answered in the affirmative. By section 2 of the Lien Law the term " real property " "includes real estate, lands, tenements and hereditaments, corporeal and incorporeal, fixtures, and all bridges and trestle work, and structures connected therewith, erected for the use of railroads.   *   *   *"  If we understand the argument for the respondent, it is that as to railroads the general language of section 3 of the Lien Law, giving the right to a lien in favor of one who furnishes materials or performs labor for the improvement of real property,

is limited by the language of section 2 defining the term "real property," so as to restrict the right of lien to labor performed and material furnished upon bridges and trestle work and the structures connected therewith erected for the use of railroads. We are not impressed by this argument. We think the addition of the words "and all bridges and trestle work and structures connected therewith erected for the use of railroads" to the general definition of the term "real property" denotes a legislative intent to enlarge, rather than restrict, the statutory meaning of that term as applied to the subject of mechanics' liens. When sections 2 and 3 of the Lien Law are read together, as component parts of one law, their fair construction is that any of the persons designated in the latter section may acquire a lien for the purposes therein named, and that the term "real property" shall not only include real estate, lands, tenements, hereditaments, corporeal and incorporeal, and fixtures, but in addition thereto all bridges and trestle work and structures connected therewith for the use of railroads. In making this specific reference to a certain class of railroad structures the legislature seems to have intended to remove them from the realm of uncertain classification and place them unmistakably in the general category of real property. This view of the statute seems to be strengthened rather than weakened, by the provision of section 6 of the Lien Law, which gives to any person who shall perform any labor for a railroad corporation a lien for the value of such labor upon its railroad track, rolling stock, land and appurtenances, by complying with the provisions of the act. It would be quite unreasonable, we think, to impute to the legislature an intention to give a general laborer for a railroad corporation a lien upon all of its property, and to deprive one whose labor and material goes into the building of a railroad of the right to any lien unless he happens to have performed labor or furnished material for one or more of its bridges, trestles or structures connected therewith.

It was clearly the intention of the legislature in enacting the present General Lien Law to assimilate and harmonize as

far as possible the entire law embraced in the subject into a complete and harmonious statute, the various provisions of which should be held to relate to all mechanics' liens affecting all real property whether public, semi-public or private, unless the language of the act evidences a different intent, or where from the nature of the subject the regulations as to one class are inapplicable to another. (*Brace* v. *City of Gloversville*, 167 N. Y. 452.) If this was the purpose of the statute, there is no force in the respondent's argument to the effect that because a railroad company is a quasi-public corporation, the construction and operation of which are for the public use and benefit, the ordinary lien laws which give to mechanics and materialmen a lien upon buildings constructed by them, are not to be considered to extend to the roadway and other property of a railroad corporation essential to the operation and maintenance of its road, except when express provision is made therefo:. As we have already stated, it is not apparent why the legislature should give to the general employees of a quasi-public corporation a lien upon all of its property, and at the same time deny to one whose labor or material has contributed to the construction of the road any lien except for such labor and materials as form part of a few specially enumerated structures.

It follows, therefore, that such part of the judgments below as dismissed the complaint of the appellant, the Schaghticoke Powder Company, should be reversed, and, as the facts are not disputed, judgment absolute is ordered in favor of such appellant, with costs in all courts.

Cullen, Ch. J., Gray, O'Brien, Bartlett and Vann, JJ., concur; Haight, J., dissents.

Judgment accordingly.