Argued January 8, reversed and remanded January 22, 1918.

# MULTNOMAH COUNTY v. UNITED STATES FIDELITY & GUARANTY CO.*

(170 Pac. 525.)

Counties—Contract for Work—Bond—Statute.

1. Section 6266, L. O. L., requiring anyone contracting with the state, a municipality, county, or school district for prosecution of any work to give the usual penal bond, with the additional obligations that he make payments to all supplying him labor or material for any prosecution of the work, is not limited to what is incorporated into the work, but concerns every approximate relation of the contractor to that which he has contracted to do.

Highways—Contract for Work—Bond—Use of Engine—Compensation.

2. The bond of a contractor with a county for improving a highway, who was to furnish all material, tools, and equipment and labor, conditioned that he shall pay all subcontractors and laborers, materialmen, and all persons who shall supply laborers or subcontractors with materials or supplies for carrying on the work, covers compensation to the owner for the use of an engine hired by a subcontractor for work in grading.

———

*On nature of labor and material which will support an action upon a contractor's bond, see notes in 43 L. R. A. (N. S.) 162; L. R. A. 1915F, 951.                                          Reporter.

Highways—Contract for Work—Bond—"Labor and Material"—Use of Engine.
   3. Though the use of an engine is not strictly "labor and material," a bond for payment of which Section 6266, L. O. L., requires a county to exact of a contractor for work, a bond taken broad enough to cover compensation therefor is valid.
   [As to right of one furnishing labor or material to sue on bond given by contractor to property owner, see note in **Ann. Cas.** 1916A, 754.]

From Multnomah: Robert G. Morrow, Judge.

Department 2. Statement by Mr. Justice Bean.

This is an action by the county of Multnomah for the use and benefit of L. H. McMahan upon a contract and bond executed by the Pacific Bridge Company, a corporation, and its surety. The complaint alleges in substance the following facts:

On June 21, 1915, Multnomah County entered into a contract with the defendant Pacific Bridge Company for the improvement of a portion of Columbia River Highway, namely, section D from the east end of Oneonta Bridge to the easterly line of the county. The contract and bond are set out in the complaint as exhibits. By the material provisions of the contract the construction company specifically agreed "to furnish all material, tools and equipment and all labor necessary to complete the above-described work strictly in accordance with said plans, specifications and schedule of rates," and before the contract became effective to furnish the county with a bond providing for the faithful performance of the agreement. The contractor agreed "to promptly. as due, make payments to all persons supplying" him with labor or material for the prosecution of the work provided for. Provision was made granting a right of action to persons furnishing material, labor and supplies to the contract company, who were not paid, as follows:

"The contractor further agrees that any person who supplied labor or material for the prosecution of any work provided for under this contract is hereby authorized to institute an action against said contractor or his sureties on his own relation in the name of the county, and to prosecute the same to final judgment for his own use and benefit. The contractor further agrees that all the provisions of the laws of the State of Oregon, applicable to the protection of subcontractors, materialmen and laborers engaged in carrying out the terms of this contract, are hereby made a part of this contract whether expressly incorporated herein or not."

The construction company filed a bond with the county in accordance with the contract and Section 6266, L. O. L., with the defendant United States Fidelity & Guaranty Company as surety. After reciting the contract between Multnomah County and the Pacific Bridge Company, the bond provides:

"Now, therefore, if the said principal herein * * shall faithfully and truly observe and comply with the terms, conditions and provisions of the said contract, in all respects, and shall well and truly and fully do and perform all and singular the covenants, conditions, guaranties, matters and things by it agreed, covenanted and undertaken to be performed under said contract, plans and specifications, upon the terms proposed therein, * * and shall indemnify and save harmless the county of Multnomah, * * and shall promptly pay all laborers, mechanics, subcontractors and materialmen, and all persons who shall supply such laborers, mechanics or subcontractors, with materials, supplies or provisions for carrying on such work, all just debts, dues, and demands incurred in the performance of such work, * * then this obligation to be void; otherwise to remain in full force and effect."

It will be seen that the contract and bond embraced all the conditions mentioned in the statute, and some specifications in excess of the statutory requirements.

After setting forth the organization of the county, the incorporation of the construction company and the United States Fidelity & Guaranty Company and the contract and bond, plaintiff's complaint proceeds to allege as follows: The Pacific Bridge Company commenced the construction of the improvement and during the course thereof entered into an agreement with the defendant, T. A. Sweeney, for the grading of the highway. In performing this work he used a caterpillar engine which he hired from L. H. McMahan whom he promised and agreed to pay the sum of $10 per day for the use thereof. Between June 21, 1915, and October 24th of that year Sweeney had the use of the caterpillar engine for work on the improvement for a period of 64 days, making an aggregate total of $640 due therefor, no part of which has been paid except $10 and $210 expended in making renewals and repairs on the engine, leaving a balance of $420 unpaid. Prior to the commencement of the action L. H. McMahan made application to the county of Multnomah by affidavit for a certified copy of the bond and contract of the defendant Pacific Bridge Company and was furnished the same. The defendants filed separate demurrers to the complaint upon the ground that that pleading did not state facts sufficient to constitute a cause of action. The demurrer of defendant T. A. Sweeney was on the further ground that there is no basis for the contractual relation set forth in the complaint between himself and the plaintiff. The respective demurrers were sustained by the court and plaintiff having refused to plead further judgment was entered in favor of the several defendants. Plaintiff appeals.                    REVERSED AND REMANDED.

For appellant there was a brief over the names of *Mr. William P. Lord* and *Mr. Arthur I. Moulton,* with an oral argument by *Mr. Lord.*

For respondents, United States Fidelity & Guaranty Co. and The Pacific Bridge Co., there was a brief over the names of *Mr. M. H. Clark* and *Mr. A. E. Clark,* with an oral argument by *Mr. M. H. Clark.*

For respondent, T. A. Sweeney, there was a brief and an oral argument by *Mr. Thomas Mannix.*

MR. JUSTICE BEAN delivered the opinion of the court.

1. In 1903, Laws of 1903, p. 256 (Section 6266, L. O. L.), the legislature enacted the following:

"Hereafter any person or persons, firm or corporation, entering into a formal contract with the State of Oregon, or any municipality, county, or school district within said state, for the construction of any buildings, or the prosecution and completion of any work, or for repairs upon any building or work, shall be required before commencing such work, to execute the usual penal bond with good and sufficient sureties, with the additional obligations that such contractor or contractors shall promptly make payments to all persons supplying him or them labor or materials for any prosecution of the work provided for in such contracts."

The act provides that any person or persons who so furnish labor or material may obtain a copy of the contract and bond, and that such person

"shall have a right of action, and shall be authorized to bring suit in the name of the State of Oregon, or any county, municipality, or school district within such state for his or their use and benefit against said contractor and sureties."

This act was amended in 1913, but not so as to change the provisions above referred to.

The position taken by the defendants is that the payment for the use of the caterpillar engine is not provided for in the contract and bond under the terms of the statute. In the expression of the statute it is quite likely that the lawmakers to a certain extent had in contemplation the various lien statutes providing for liens on buildings and other property both real and personal for labor and materials. However, the enactment under consideration has a different purport and broader meaning than the ordinary lien statutes; therefore, the construction of the latter affords but little assistance in arriving at the intent of the former. The lien statutes have usually been strictly held to cover only what is incorporated into the building or property against which the lien is claimed. Take for instance our mechanic's lien statute, Section 7416, L. O. L., which provides in part that

"a person performing labor upon or furnishing material, or transporting or hauling any material of any kind to be used in the construction, alteration, or repair, either in whole or in part, of any building"

shall have a lien upon the same. Such lien statutes obviously cover only what goes into the building or structure and adds to the value of the same.

In *American Surety Co.* v. *Lawrenceville Cement Co.*, 110 Fed. 717, 721, Judge PUTNAM states:

"However, this principle of discrimination is so strongly entrenched in the practical rules properly applicable to the construction of this statute that it needs no further exposition. It has, however, no necessary relation to repairs of an incidental and comparatively inexpensive character, made on the plant during the progress of the work, representing only the ordinary wear and tear or the equivalent thereof. Such repairs, under some circumstances, are within

the purview of the statute, and are not always excluded by any rules of construction which we must apply to it.''

Even this underlying equity which requires these lien statutes to be so limited in their application is not applied with absolute strictness; for instance, where a bill of lumber is sold to one erecting a building no distinction is made between the portions of such material which are actually incorporated into the parts of the buildings and those which are used in erecting temporary floors and stagings necessary to aid in the construction. When the Congress of the United States enacted the statute, from which the one under consideration providing for giving the bond in question was copied, it used a much broader expression than is employed in the lien statutes. Our law uses the following language:

''Shall promptly make payments to all persons supplying him or them labor or materials for *any prosecution* of the work, provided for in such contracts.''

As declared by Judge Putnam in *American Surety Co.* v. *Lawrenceville Cement Co.,* 110 Fed. 717, 721, ''the statute in question concerns every approximate relation of the contractor to that which he has contracted to do.''

2. In the present case the act and the bond are susceptible of a more liberal construction than the lien statutes. Under the law and the plain language of the bond all indebtedness incurred for labor and material used in the prosecution of the work contracted to be performed is thereby protected. The grading of the highway was an important part of the construction. If Mr. Sweeney had owned the engine as a part of his construction outfit and had used the same in the prosecution of the work in the same way he did after

hiring the machine, there could have been no question but that a fair compensation for the wear and deterioration of the instrumentality would have been protected by the bond under the law. The making of the contract with another for the use of the engine in moving the dirt and material in the prosecution of the work of making the grade does not change the substance of the transaction so that the reasonable expense therefor would not come within the provisions of the bond. On the other hand, such compensation which takes the place of the necessary wear and incidental repairs of the machine (see *American Surety Co.* v. *Lawrenceville Cement Co.,* 110 Fed. 717, 721) comes directly within the protection of the letter and spirit of the bond. The use of the caterpillar engine having been supplied to the contractor through the medium of the subcontractor Sweeney for the prosecution of the work provided for in the contract, and the Pacific Bridge Company having given a bond with surety to pay for the same and having failed to do so, as alleged in the complaint, the demurrers to the complaint should have been overruled: See *United States* v. *American Surety Co.,* 200 U. S. 197 (50 L. Ed. 437, 26 Sup. Ct. Rep. 168) ; *School Dist. No. 30* v. *Alameda Const. Co., ante,* p. 132, 169 Pac. 507, 788; *School Dist. No. 45* v. *Hallock,* 86 Or. 687 (169 Pac. 130) ; *Portland* v. *New England Casualty Co.,* 78 Or. 195 (152 Pac. 253) ; *Columbia County* v. *Consolidated Contract Co.,* 83 Or. 251 (153 Pac. 438). In *Grants Pass Trust Co.* v. *Enterprise Min. Co.,* 58 Or. 174, 177 (113 Pac. 859, 34 L. R. A. (N. S.) 395, 1 Water & Min. Cas. 412), a suit to enforce a miner's lien allowed by Section 7444, L. O. L., to any person furnishing materials or supplies for the working or development of any mine, it was held in an elaborate opinion by Mr. Justice

MOORE that electricity furnished to a mine for illumination or power constituted "supplies" within the meaning of the law.

The line of demarcation must be drawn between labor and material furnished a contractor which are covered by such a bond and those without the pale of such an undertaking by taking into consideration the service and material in the particular case.

In *National Surety Co.* v. *United States,* 228 Fed. 577, 578, the syllabus says:

"Supplies furnished a contractor with the United States, which were specifically intended for current consumption directly on the work, such as drills and material for drills used in drilling machines, and made to be used up currently, and in fact used up in direct and immediate contact with rock removed as part of the contract, were covered by the contractor's bond; the removal of such rock being a part of the 'construction of the work.' "

By the explicit terms of the contract the use of the engine referred to and that of other similar appliances was made a part of the contract price. According to the averments of the complaint the energy of the instrument entered directly into the construction of the highway just as effectively as though it had been owned by the contractor or subcontractor and evidently served, to a large extent at least, as a substitute for manual labor. There is no chance for a double allowance for the service claimed.

This case is somewhat analogous to and within the reasoning of the so-called powder cases and coal cases: See *Schaghticoke Powder Co.* v. *Greenwich etc. R. Co.,* 183 N. Y. 306 (76 N. E. 153, 111 Am. St. Rep. 751, 5 Ann. Cas. 443, 2 L. R. A. (N. S.) 288), which is a lien case, and *City Trust etc. Surety Co.* v. *United States,* 147 Fed. 155, (77 C. C. A. 397). The statute

should not be extended to include the use of material not intended to be protected by it or by the contract and bond, such as claims for the purchase of an engine, hoisting apparatus, or the like. In the case of *United States Fidelity & Guaranty Co.* v. *Bartlett*, 231 U. S. 237 (58 L. Ed. 200, 34 Sup. Ct. Rep. 88), the contractors were to build a breakwater. They owned a quarry which, in order to perform their contracts, it was necessary to open to get out the stone, transport it and dump it into the water. The question involved was the labor cost of quarrying and hauling the materials. The court held that the whole of this was labor performed on the contract.

·3. According to the strict legal definition of the term "labor and material" the use of the engine would not be embraced therein: 2 Wds. & Phrases (2d Series), p. 1321. There can be no question but that the services of the machine in the actual grading of the highway, as alleged in the complaint, is covered by the language of the contract and bond. We see no reason why the parties negotiating the transaction may not follow their own wills as long as their minds coincide perfectly, in stipulating as to matters which are often the subject of controversy, as shown by the opinions in the cases above cited; and plainly say by their written instrument what shall be included in the contract and bond, considered as labor and material and paid for by the contractor and his surety, and so avoid disputes between those interested in the construction of the public improvement.

Statutes like the one in question have usually been and should be given a liberal construction so as to carry out the legislative intent and effect the purpose contemplated by the law: *United States* v. *American Surety Co.*, 200 U. S. 197 (50 L. Ed. 437, 26 Sup. Ct.

Rep. 168); *American Surety Co.* v. *Lawrenceville Cement Co.,* 110 Fed. 717; *Portland* v. *New England Casualty Co.,* 78 Or. 195 (152 Pac. 253); *Ulster County Sav. Inst.* v. *Young,* 161 N. Y. 23 (55 N. E. 483); *Hurley-Mason Co.* v. *American Bonding Co.,* 79 Wash. 564, (140 Pac. 575). A public corporation authorized by law to require bonds of contractors for public work to secure the payment of labor and materials is not restricted by the statute from taking other or additional measures and provisions in excess of those specified by the statute in order to protect those who aid in the public work: Brandt on Suretyship (3 ed.), § 31; 1 Elliott on Roads & Streets (3 ed.), § 646; 2 Dillon on Mun. Corp. (5 ed.), § 830; 19 R. C. L., 1078, § 364.

In the case at bar, if the work mentioned had been performed by the exercise of the muscles of laborers there would have been no question but that the same was protected by the statute. With the hard surface road pavement coming into vogue, new methods of road construction utilizing high power machinery, equipment and appliances have superseded the old mode of construction with pick and shovel. It seems to us that it was intended by the enactment, as expressed by the lawmakers, that the construction of an improvement, such as a paved highway, should be paid for; that in order to carry out the intent of the law it was the right and duty of the county officials to require a bond protecting the payment of obligations incurred for labor or material approximating the construction work. Plainly the contract and bond in question made such provisions and nominated the item sued for. The language of the statute indicates that the lawmakers had in mind the modern conditions prevailing at the time of the enactment. By the recitation in their contract and bond the parties to the

transaction have to a certain extent placed their own construction upon the law, assented thereto and made their binding agreement in conformity therewith. Within the meaning of the contract and bond, which are in accordance with the spirit of the statute, the service of the engine should be deemed "labor and material." We are guided by the averments of the complaint. If the claim for the service of the machine was not reasonable or if the instrumentality was not used as alleged, that should be explained in an appropriate manner.

The judgment of the lower court sustaining the demurrers to the complaint is reversed and the cause will be remanded for further proceedings not inconsistent herewith.    REVERSED AND REMANDED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE MOORE and MR. JUSTICE MCCAMANT concur.