Argued at Pendleton October 28, reversed and remanded December 23, 1924.

## D. FITZGERALD v. ROSCOE NEAL ET AL.

### (231 Pac. 645.)

**Highways—State Highway Commissioner may Require Bond of Contractor, Making It Responsible for Claims not Provided for by Statute.**

1. State highway commissioner may require public contractor to execute bond containing provisions making it responsible for payment of claims in excess of those provided for by statute.

**Bonds—Public Contractor's Bond Enlarging Conditions Required by Statute is Valid.**

2. Public contractor's bond enlarging conditions required by statute is valid common-law obligation if in harmony with statute.

**Highways—Highway Contractor must Bind Himself to Pay When Due for Labor and Material, and Give Bond for Faithful Performance of Such Contract.**

3. Under Sections 2991, 4435, and 6718, Or. L., as amended by Laws of 1923, page 32, every contract with state for improvement of public highway must bind contractor to pay as due for labor and

2. See 4 R. C. L. 54.

material before commencing work, and to execute bond conditioned on faithful performance of such contract.

**Statutes—In Construing Statute Affecting Public · Contractors and Their Bonds, Object of Legislature may be Considered.**

4. In construing statutes relative to public contractors, and requiring bonds of them conditioned on payment for labor and material, object of legislature may be considered.

**Highways—Statute Affecting Public Contractors' Bonds Liberally Construed to Effectuate Purpose Intended.**

5. Statute requiring bonds of public contractors, conditioned on payment of labor and material claims, should be liberally construed to effectuate purpose intended.

**Highways—Statute Affecting Public Contractors' Bonds not Intended to Bind Him for Payment of Claims not Arising Out of Work Undertaken.**

6. Sections 2991, 4435 and 6718, Or. L., as amended by Laws of 1923, page 32, relating to bonds required of public contractor, are not intended to bind contractor for payment of any claims for labor and material not supplied for prosecution of work undertaken.

**Highways—Complaint in Action Against Highway Contractor and His Surety Held Sufficient, Though Defendant's Contract not Produced or Its Terms Alleged.**

7. Complaint in action against highway contractor and surety on his bond to recover for labor and materials furnished subcontractor, which alleged defendants had undertaken to promptly pay all laborers, mechanics, subcontractors, etc., *held* sufficient, though contract with state was not produced or its terms alleged.

**Evidence—In Action for Labor and Material Furnished Highway Contractor, His Contract not Set Out is Presumed to Contain Provisions Required by Statute.**

8. In view of presumption that official duty has been performed, contract between state and highway contractor must, in action on his bond for labor and material furnished subcontractor, be presumed to contain every provision required by statute.

**States—Requirement That Contract Binds Public Contractor to Promptly Pay Labor and Material Claims Becomes Part of Contract Whether Expressly Incorporated Therein or not.**

9. Requirement of Section 6718, Or. L., as amended by Laws of 1923, page 32, that every contract made by state shall contain condition that contractor promptly pay as due all labor and material claims, becomes part of such contract whether expressly incorporated therein or not.

---

5.   See 25 R. C. L. 960.
8.   See 22 R. C. L. 472.
9.   See 6 R. C. L. 855.

**Highways—Rule That Surety's Liability shall not be Extended Beyond Precise Terms of Contract Inapplicable to Compensated Surety Company.**

10. Rule that liability of surety shall not be extended beyond precise terms of his contract is not applicable to compensated surety company, in action on an undertaking given by a public contractor for improvement of public highway.

**Principal and Surety—Uncertain or Ambiguous Language in Bond Given by Compensated Surety Construed Most Favorably to Person Intended to be Protected.**

11. Where meaning of covenants in bond given by compensated surety is doubtful or language susceptible of two constructions, that construction most favorable to party whose protection was intended should be adopted.

**Highways—Public Contractor's Bond Held not to Evidence Intent to Increase Statutory Obligations—"Laborers"—"Mechanics"—"Materials"—"Carrying on the Work."**

12. Public contractor's bond, conditioned that he would "promptly pay laborers, mechanics, subcontractors, materialmen, and all persons who shall supply * * materials, supplies, or provisions for carrying on the work," *held* not to indicate intent to enlarge obligations of surety imposed by Section 2991, Or. L., requiring bond conditioned on prompt payment of "all persons supplying him [contractor] or them labor or materials for any prosecution of the work provided for"; "laborers, mechanics, subcontractors, and materialmen" meaning no more than "all persons supplying * * labor or materials," which latter term is inclusive of "supplies" and "provisions," and "carrying on of the work" meaning no more than "prosecution of the work."

**Highways—Highway Contractor and Surety Held not Liable for Repairs on Subcontractor's Plant and Machinery Necessary to Prosecution of Work Intended.**

13. Public highway contractor and his surety under bond *held* not liable for repairs of subcontractor's machinery and plant, so as to put it in condition to perform the agreed work.

**Words and Phrases—"Subcontractor."**

14. The term "subcontractor," from its very definition, means one who has contracted with the original contractor for the performance of all or a part of the work or services which such contractor has himself contracted to perform.

---

See (1, 3, 10, 13) 29 C. J. 612. (2) 9 C. J. 27. (4) 36 Cyc. 1110. (5) 29 C. J. 611. (6) 29 C. J. 613 (1926 Anno.). (7) 29 C. J. 613. (8) 22 C. J. 130. (9) 36 Cyc. 880. (11) 32 Cyc. 307. (12) 29 C. J. 612 (1926 Anno.), 613 (1926 Anno.). (14) 29 C. J. 612 (1926 Anno.).

10. Distinction between surety company and individual surety as to liability, see notes in Ann. Cas. 1912B, 1087; Ann. Cas. 1916B, 240; Ann. Cas. 1916E, 1130; Ann. Cas. 1917E, 1088. See, also, 21 R. C. L. 975, 1160.

11. See 21 R. C. L. 1161.

From Union: J. W. KNOWLES, Judge.

In Banc.

REVERSED AND REMANDED.

For appellants there was a brief over the name of *Messrs. Crawford & Eakin,* with an oral argument by *Mr. F. S. Ivanhoe.*

For respondent there was a brief over the name of *Messrs Cochran & Eberhard,* with oral arguments by *Mr. H. E. Dixon* and *Mr. George T. Cochran.*

RAND, J.—The plaintiff commenced this action against the defendants, Neal & Gaskell, copartners, Security Construction Company and National Surety Company of New York, to recover the balance of an account for labor and material furnished by plaintiff to Neal & Gaskell.

The material facts are: The defendant Security Construction Company, entered into a contract with the state to construct a certain state highway in Baker County, Oregon, known as the Baker-Nelson section of the Old Oregon Trail, and executed an undertaking to the state with the defendant, National Surety Company of New York, as surety, conditioned on faithful performance of its contract. Subsequently, and on May 5, 1922, the Security Construction Company entered into a subcontract with the firm of Neal & Gaskell for the performance of a part of the work. Under this contract Neal & Gaskell undertook to furnish and haul the crushed gravel for the surfacing of certain designated portions of said highway and to incorporate the same into said highway, and, by the terms of the contract itself, Neal & Gaskell expressly undertook to furnish the gravel-pits and

any and all trucks and machinery necessary to carry out the contract on their part.

The complaint alleges that the plaintiff "performed work, labor and services and furnished material for the repair and repairing of certain trucks and a car and on machinery, for the said defendants, Neal & Gaskell, and which were used by them in carrying out their contract as hereinbefore set forth, and all of which was a necessary part for the carrying out of the said contract by Neal & Gaskell." The defendants, Security Construction Company and National Surety Company of New York, filed an answer denying said allegation and alleging, in effect, among other things, that whatever labor and material was furnished by the plaintiff to Neal & Gaskell, it was furnished to them alone and not to the other defendants, and went into and became a part of the road construction plant of Neal & Gaskell; that none of said labor and material entered into the highway then being constructed by the defendant, Security Construction Company; that no part thereof was included or intended to be included in said contract and bond given to the state, and that the charge for the same does not constitute a just debt or demand incurred in the performance of the work under their said contract. These allegations were put in issue by the reply. The cause was tried to a jury and plaintiff had judgment, from which the construction company and the surety company have appealed.

Testimony was given upon the trial, and it appears therefrom that, as alleged in the complaint, the labor and material for which recovery is sought was performed and furnished in the repair of the automobile, trucks and machinery described in the complaint, and not for any other purpose. It also appears from the testimony that in performing their

contract some use was occasionally made by Neal & Gaskell of the automobile in conveying laborers and supplies to the place of work, and that the trucks were used for hauling crushed gravel from the plant for distribution upon the highway, and that the machinery was used in the operation of the plant. There is no pretense in the testimony that Neal & Gaskell have not been paid all that they were entitled to be paid under their contract.

The Security Construction Company, hereinafter referred to as construction company, and the National Surety Company, hereinafter referred to as surety company, assign as error the refusal of the court to grant a nonsuit; its refusal to direct a verdict; the giving of certain instructions, and its refusal to give other instructions requested by the defendants. These assignments present for decision the question of whether the original contractor and his surety are liable for material entering into and labor performed in the repair of a part of a subcontractor's plant which such subcontractor is using in the performance of his contract and which he has contracted to furnish for the doing of the work.

1, 2. The determination of this question depends upon the construction of the statute under which the contract of the construction company with the state and its undertaking were given, and also upon the determination of the question of whether the terms of the undertaking itself are such as to enlarge the obligations of the surety beyond those directly required by statute. For the law is settled in this state that the state highway commission, who was empowered to enter into the contract and to accept the undertaking on behalf of the state may, like other municipal bodies of the state, require a public contractor to execute a bond containing provisions mak-

ing it responsible for the payment of claims in excess
of those provided for by statute, in order that those
who aid in the public work shall be protected in the
payment of their claims: *Multnomah County* v. *United
States F. & G. Co.*, 87 Or. 198, 208 (170 Pac. 525,
L. R. A. 1918C, 685); *Clatsop County* v. *Feldschau*,
101 Or. 369 (199 Pac. 935, 18 A. L. R. 1221). It is
also settled in this jurisdiction that if the conditions
written into an undertaking executed by a public
contractor enlarge those directly required by statute,
the undertaking as to such conditions is a common-law
obligation, which, having been voluntarily assumed,
is valid if in harmony with and not prohibited by
statute: *Clatsop County* v. *Feldschau, supra.*

Section 6718, Or. L., both before and after the
amendment by Chapter 24, Laws of 1923, provided that
"every contract made by the state * * shall contain
a condition that the contractor shall promptly, as due,
make payment to all persons supplying to such con-
tractor labor or material for the prosecution of the
work provided for in such contract, * * ." And
where contracts for the improvement of state high-
ways are entered into, Section 4435, Or. L., provides
that the contract shall be made in the name of the
state, and that "a satisfactory bond shall be required
of the contractor of not less than fifty (50) per cent
of the total amount of his bid for the faithful per-
formance of his contract." Section 2991, Or. L.,
provides that any person, firm or corporation entering
into a formal contract with the state "shall be re-
quired before commencing such work to execute the
usual penal bond with good and sufficient sureties,
with the additional obligations that such contractor
or contractors shall promptly make payments to all
persons supplying him or them labor or materials for

any prosecution of the work provided for in such contracts.''

3. Under these provisions every contract to which the state is a party for the improvement of a public highway must contain a stipulation binding the contractor to pay promptly, as due, every person supplying him with labor or material for the prosecution of the work provided for in the contract, and before commencing the work he is required to execute a bond or undertaking to the state conditioned for the faithful performance of his contract, and that he will promptly pay all persons supplying him with labor or material for the prosecution of the work provided for in the contract.

4, 5. In construing these statutes and applying them to the question involved, it is proper to consider the object the legislature intended to accomplish by their enactment. It is clear that the legislature intended to insure the payment of every person who should supply labor or material for the prosecution of any public work and to render it impossible for any contractor performing such work, whether insolvent or dishonest, to fail to pay for the labor and material supplied for the prosecution of the work and for which the contractor has himself been paid. To accomplish that end the statute requires the contractor not only himself to contract for the payment of all such claims, but also requires him to provide a good and sufficient undertaking which shall guarantee the faithful performance of his contract and also guarantee that upon his default the surety will pay for all labor and material supplied for the prosecution of the work. As these statutes were enacted for the benefit of the public they should be liberally construed to effectuate the purpose for which they were enacted: *Portland* v. *New England Casualty Co.,* 78 Or. 195, 200

(152 Pac. 253); *Multnomah County* v. *United States F. & G. Co., supra.*

6. But it is equally clear that the legislature did not intend to require such contractor, before commencing work, to contract for, or to execute an undertaking guaranteeing the payment of any claim for labor or material which was not supplied for the prosecution of the work which the contractor had undertaken to perform. "It is the labor and material supplied for the prosecution of the work which is protected and not some obligation incurred by the contractor which does not approximate the construction contracted to be done." *Portland* v. *O'Neill,* 98 Or. 162, 167 (192 Pac. 909, 910). Hence, if the claim is one which comes fairly within the terms of the statute, the statute requires either the contractor or his surety to pay it, but if it does not come fairly within the terms of the statute, it is beyond the pale of the statute and not protected. To give to the statute any other construction would be to add terms to the statute not to be found in it, which is a function of the legislature and not of the courts.

7. Neither the construction company's contract with the state, nor its undertaking was produced upon the trial or made a part of the record, nor are the terms of the contract set forth in the complaint. Because the contract was not produced nor the terms thereof alleged in the complaint defendants contend that the complaint does not state facts sufficient to constitute a cause of action against the appealing defendants or either of them. The argument is that the contract between the state and the construction company specified the particular work, labor and material to be supplied in the performance of the work; that the bond was given to secure the performance of the contract, and that unless the labor and material sued

for was a part of what the construction company had contracted to do, the complaint does not state a cause of action. The complaint, however, does allege that the construction company entered into a contract with the state for the construction of the highway and that the labor and materials supplied by the plaintiff were supplied in the prosecution of the work which the contractor had contracted to perform, and that the undertaking was executed pursuant to said contract. The complaint also alleges, and it is admitted by the answer, that by the terms of the undertaking the construction company and the surety company, among other things, expressly undertook to "promptly pay all laborers, mechanics, subcontractors and materialmen, and all persons who shall supply such laborers, mechanics or subcontractors with material, supplies. or provisions for carrying on such work, and all just debts, dues and demands incurred in the performance of such work." The answer denies that the labor and material for which plaintiff seeks to recover, or any part thereof, were supplied for the prosecution of the work. Under this state of the pleadings an issue was presented which, if established by plaintiff, would entitle plaintiff to recover. The complaint, therefore, was sufficient.

8, 9. Although the contract is not in evidence, yet it is a legal presumption that official duty has been performed. The answer admits that a contract for the construction of a highway was entered into by the state and the construction company. We must therefore assume, there being no proof to the contrary, that the contract thus entered into contained every provision that the statute directs that a contract of that character shall contain. (See *Baker City M. Co.* v. *Idaho C. P. Co.*, 67 Or. 372, 377, 136 Pac. 23.) Especially should this assumption be made in this

case since the obligations which the statute requires a contractor to assume in his contract with the state are admitted by the answer to be contained in the undertaking involved here. Again, the assumption is proper because the contract was entered into by the construction company and the state pursuant to the positive direction contained in the statute that "every contract made by the state * * shall contain a condition that the contractor shall promptly, as due, make payment to all persons supplying to such contractor labor or material for the prosecution of the work provided for in such contract." Hence, even if this provision was not written into the contract it was as much a part of the contract as if it had been expressly incorporated therein, since the contract was entered into subject to the provisions of the statute governing the making thereof.

10. The rule of *strictissimi juris,* which means, when applied to a surety bond, that the liability of a surety shall not be extended beyond the precise terms of his contract, has been held to be not applicable to a surety company in an action brought to recover upon an undertaking given by a public contractor for the improvement of a public highway. See *Columbia County* v. *Consolidated Con. Co.,* 83 Or. 251, 268 (163 Pac. 438, 444), where it was held that a compensated surety company is bound by the recitals in the bond and that the "bond must be construed most strongly in favor of the indemnity which the obligee has good reason to expect." Again, in *Wasco County* v. *New England Equitable Ins. Co.,* 88 Or. 465, 471 (172 Pac. 126, 128, Ann. Cas. 1918E, 656, L. R. A. 1918D, 732), this court said: "The rule of *strictissimi juris,* which is usually available to those who become sureties without compensation is generally relaxed when applied to a paid surety and in

this as well as in most jurisdictions, a hired bonding company must show that its rights have been injuriously affected before it can defeat its contract of suretyship." See, also, *Bross* v. *McNicholas,* 66 Or. 42, 48 (133 Pac. 782, Ann. Cas. 1915B, 1272); *Leiter* v. *Dwyer Plumbing Co.,* 66 Or. 474 (133 Pac. 1180); *Neilson* v. *Title G. & S. Co.,* 81 Or. 422, 427 (159 Pac. 1151); *Sykes* v. *Sperow,* 91 Or. 568 (179 Pac. 488). In this case the surety does not claim to have been injuriously affected, entitling it to be released from its undertaking, but defends the action upon the ground that the labor sued for was not performed in the prosecution of the work, and that the material furnished by plaintiff was not consumed in the construction of the work nor incorporated into the highway.

11. Where the meaning of the covenants contained in a bond given by a compensated surety is doubtful or uncertain, or where the language used in the obligatory part of the bond is fairly and reasonably susceptible of two constructions, under the authority last cited, the bond should be given that construction which is most favorable to those for whose protection the bond was executed. Under the view expressed in the *Columbia County* v. *Consolidated Con. Co.* case, an undertaking given by a compensated surety to guarantee the faithful performance of a contract for the improvement of a public highway stands upon the same footing as a contract affecting the public interest, and like such contract should be construed liberally in favor of the public: See 2 Williston on Contracts, § 626.

While the contractor is only required by statute to provide a surety for the payment of claims coming fairly within the terms of the statute, the undertaking given way, by its own terms, under the doctrine an-

nounced in the *Clatsop County* v. *Feldschau* case,
enlarge the obligations of the surety beyond those
required by statute. Plaintiff contends that the
terms of the undertaking under consideration have
that effect. Before this contention can be sustained
it must plainly appear that the language used by
the parties in the undertaking has that effect.

One of the conditions which the pleadings admit was
incorporated into the bond, and the only one rele-
vant to this inquiry, is the guaranty that the construc-
tion company "shall promptly pay all laborers,
mechanics, subcontractors and materialmen and all
persons who shall supply such laborers, mechanics or
subcontractors with material, supplies or provisions
for carrying on such work, and all just debts, dues
and demands incurred in the performance of such
work." It is a requirement of the state highway
commission that all surety bonds of contractors, con-
tracting for the improvement of. state highways,
shall contain, as a condition of the bond, the clause
just quoted.

Under this condition of the bond, upon default of
the principal, the surety is required to pay (1) "all
laborers, mechanics, subcontractors and material-
men"; (2) "all persons who shall supply such laborers,
mechanics or subcontractors with material, supplies
or provisions for carrying on such work," and (3)
"all just debts, dues and demands incurred in the
performance of such work." The terms "laborers"
and "mechanics" as used in the first head refer to
persons performing labor and services for the con-
tractor. If there is any uncertainty in the bond as
to what particular labor and services are referred to,
the condition of the bond must be read in connection
with the statute under which the undertaking was
given. This (Section 2991, Or. L.) requires that

any person who has entered into a formal contract with the state for the prosecution and completion of any work, before commencing such work, shall "execute the usual penal bond with good and sufficient sureties, with the additional obligations that such contractor or contractors shall promptly make payments to all persons supplying him or them labor or materials for any prosecution of the work provided for in such contract."

12. The laborers and mechanics to whom the bond refers are therefore those persons who supply such contractor with labor for any prosecution of the work which the contractor himself has undertaken to perform for the state. The term "subcontractor," from its very definition, means one who has contracted with the original contractor for the performance of all or a part of the work or services which such contractor has himself contracted to perform. The word "materialmen," if it is to be distinguished from the words found in the second head, must refer to materialmen furnishing material to the original contractor, for which, under the terms of the statute, the surety is liable, if furnished for use in the prosecution of the work provided for in his contract. The persons coming under the second head are limited to those who shall supply such laborers, mechanics or subcontractors with material, supplies or provisions for carrying on such work. The words "supplies" and "provisions" contained in the bond are not employed in the statute. The word used in the statute is "materials" and this includes both supplies and provisions, provided that they are furnished for the prosecution of the work. The statute itself restricts and confines the materials, for which the surety is liable, to such only as are furnished to a contractor or a subcontractor for the

prosecution of all or a part of the work provided for in the contract with the state. The debts, dues and demands referred to in the third head include only such debts, dues and demands as are incurred in the performance of the work which the contractor has undertaken to perform for the state. There is no difference in the meaning of the phrase employed in the bond "for carrying on the work" and the phrase employed in the statute "for the prosecution of the work." There is nothing, therefore, to be found in the bond which indicates an intent to enlarge the obligations of the surety beyond those required by statute. Hence, neither the original contractor nor the surety is liable for any labor or material unless such labor or material was furnished for the prosecution of the work provided for in the contract of the original contractor with the state.

13. Having disposed of these preliminary questions, the real question in the case will be considered, namely, was the labor or material furnished by plaintiff of such kind or character that an action will lie against the contractor or the surety for the recovery thereof?

The contract between the construction company and the subcontractors is set forth *in haec verba* in the complaint. The subcontractors in terms contracted with the construction company to furnish at their own expense "any and all labor, trucks and machinery necessary to carry out this contract on his part," and that "all costs in connection therewith, (that is, the furnishing of the plant and the complete performance of their contract) shall be understood to be included in the unit price for crushed gravel and screened gravel surfacing." Under these express provisions the subcontractors undertook to furnish the plant and, so far as it was essential to the faithful

performance of their contract, they impliedly agreed
to keep the same in repair and in good working order
at their proper cost and expense, for which they
were to be and have been compensated by the pay-
ment of the price fixed for the work done. Hence,
as a matter of law, neither of these defendants is
liable for the labor or material unless it was fur-
nished for the prosecution of the work which the con-
struction company itself undertook to perform which,
of course, includes that part which the subcontractors,
by their contract, undertook to perform in its behalf.
The repairs for which recovery in this action is
sought were made in order to render serviceable a
part of a subcontractor's plant for use in the prose-
cution of the work. The labor expended in making
these repairs was not performed upon the highway
nor in the construction of the highway. In making
these repairs the plaintiff was no more engaged in
the prosecution of the work of constructing the high-
way than he would have been if he had made the
repairs upon a plant which was to be used entirely
upon another piece of work. The materials fur-
nished by plaintiff were used by him in replacing and
repairing parts of an automobile, trucks and ma-
chinery, and when the repairs were made these ma-
terials became a permanent part of the things re-
paired. The things thus repaired were not consumed
in the construction of the highway nor did they be-
come a component part of it. The automobile,
trucks and machinery, although used by the sub-
contractors in doing the work they had contracted
to perform, survived the performance of the contract
and remained the property of the subcontractors and
were available for use by them upon other contracts.

Plaintiff's demand against the defendant, other than
Neal & Gaskell, except in amount, differs in no re-

spect from an action brought by a vendor against all of the defendants to recover the purchase price of the automobile, trucks and machinery in question. If plaintiff can recover from the principal contractor and its surety for these repairs, then no reason exists why the vendor cannot likewise recover for the purchase price of them, if unpaid. The purchase of these articles, to a much larger extent than the repair of them, enabled the subcontractors to perform their contract. If an action will lie to recover the reasonable value of labor and material furnished in repairing them, *a fortiori* an action will lie to recover the purchase price of them.

No case has been called to our attention, and we can find none, which holds that either the purchase price or charges for the permanent repair of a plant of a public contractor or of a subcontractor can be recovered in an action brought against the surety of such contractor. All of the authorities seem to agree that the surety of a contractor is not liable in an action on the bond for the purchase price or the repair of tools, mechanical appliances or instrumentalities forming a part of a contractor's or subcontractor's plant which, while used in the doing of the work, survive its performance and remain the property of their owner and after the completion of the contract retain their identity and fitness for future use, and that the same rule applies to such surety that would be applied in a suit to establish a materialmen's or mechanics' lien for the purchase price or for the repair of a contractor's plant: *Basshor* v. *Baltimore etc. Ry. Co.*, 65 Md. 99 (3 Atl. 285); *Giant Powder Co.* v. *Oregon Pac. Ry. Co.*, 42 Fed. 470 (8 L. R. A. 700); *Standard Boiler Works* v. *National Surety Co.*, 71 Wash. 28 (127 Pac. 573, 43 L. R. A. (N. S.) 162); *Empire Ins. Co.* v. *City of Des Moines,*

152 Iowa, 531 (131 N. W. 870, 132 N. W. 837); *Beals*
v. *Fidelity & Deposit Co.,* 76 App. Div. 526 (78 N. Y.
Supp. 584); *United States* v. *Morgan,* 111 Fed. 474;
*Alpena* v. *Title Guaranty Co.,* 159 Mich. 329 (123
N. W. 1126); *United States* v. *Surety Co.,* 23 App. Cas.
D. C. 155; *Schaghticoke Powder Co.* v. *Greenwich &
J. Ry. Co.,* 183 N. Y. 306, (76 N. E. 153, 111 Am. St.
Rep. 751, 5 Ann. Cas. 443, 2 L. R. A. (N. S.) 288);
*Chicago Lbr. Co.* v. *Douglas,* 89 Kan. 308 (131 Pac.
563, 44 L. R. A. (N. S.) 849); *Kansas City* v. *Youmans,*
213 Mo. 151 (112 S. W. 225); *City of Philadelphia,
for the Use of Taylor* v. *Malone,* 214 Pa. St. 90 (63
Atl. 539).

The reason for the rule is obvious. If the liability
of a surety should be extended so as to include the
purchase price contracted to be paid by a contractor
for the equipment used in the performance of the
work or in the repair of equipment which survives
the performance of the contract and remains the
property of the contractor or his assigns and is avail-
able for future use, a dishonest contractor, in the
performance of a minor contract, could, by the pur-
chase of the most expensive equipment or by obtaining
the most costly repairs, involve the surety in lia-
bilities far in excess, in many cases, of the amount
for which his contract was to be performed. It is
reasonable to presume that sureties would not assume
such unlimited liability. Sound public policy re-
quires that all persons supplying a contractor with
labor or material for the prosecution of public work
should be compensated therefor. Contractors per-
forming public work oftentimes become insolvent.
Common experience teaches that in many instances
credit for labor or material cannot be safely ex-
tended to contractors performing public work unless
a guaranty of payment therefor is furnished by the

contractor. This guaranty is best provided by an undertaking such as that required by the statute. The imposition upon the surety of any unjust and unreasonable liability would result in hampering and impeding the performance of public work, since contractors, if such liability was imposed, might find it impossible to procure surety bonds, and thus the beneficent purpose of the statute in requiring a contractor to furnish a bond would be defeated and some other method to provide adequate security for the public would have to be devised. For this reason public policy requires that the liability of the surety should include, but not be extended beyond, that prescribed by statute, namely, all labor and supplies furnished for the prosecution of the work provided for in the contract under which the work is being done.

14. In this state the question of whether a surety of a public contractor is liable in an action on a bond for charges incurred in the repair of a contractor's or subcontractor's plant has not heretofore been presented for decision.

In *Multnomah County* v. *United States F. & G. Co.*, 87 Or. 198 (170 Pac. 525, L. R. A. 1918C, 685), the question for decision was whether the bond of a public contractor, who was to furnish all tools and equipment for the performance of his contract, covered compensation to the owner for the use of an engine hired by a subcontractor for work in grading, and it was held that it did. In its decision of that question, the court quoted an excerpt from an opinion written by PUTMAN, J., in *American Surety Co.* v. *Lawrenceville Cement Co.*, 110 Fed. 717, where that court said: "The underlying principle which has governed him (the master whose report was under consideration) is correct in that he has discriminated

between labor and materials consumed in the work or in connection therewith, and labor and materials made use of in furnishing the so-called contractor's plant, and available, not only for this, but for other work. * * However, this principle of discrimination is so strongly entrenched in the practical rules properly applicable to the construction of this statute that it needs no further exposition. It has, however, no necessary relation to repairs of an incidental and comparatively inexpensive character, made on the plant during the progress of the work, representing only the ordinary wear and tear or the equivalent thereof. Such repairs, under some circumstances, are within the purview of the statute, and are not always excluded by any rules of construction which we must apply to it."

Basing the statement upon the excerpt quoted, this court said: "The making of the contract with another for the use of the engine in moving the dirt and material in the prosecution of the work of making the grade does not change the substance of the transaction so that the reasonable expense therefor would not come within the provisions of the bond. On the other hand, such compensation which takes the place of the necessary wear and incidental repairs of the machine (See *American Surety Co.* v. *Lawrenceville Cement Co.,* 110 Fed. 717, 721) comes directly within the protection of the letter and spirit of the bond."

It appears from the statement of the facts of the case that the subcontractor Sweeney had hired a caterpillar engine for an agreed rental of $10 per day, and while using it had expended, in making renewals and repairs thereon, the sum of $210, which sum the owner had deducted from the aggregate rental sum and had been sued for the balance only. There was no controversy concerning the amount thus expended

or contention that the deduction for renewals and rental was not a proper deduction. Hence, no question of "necessary wear and incidental repairs of the machine" was directly or indirectly involved in that case.

Again, in *Columbia County* v. *Consolidated Con. Co.*, *supra*, this court said: "Material, supplies and labor furnished for incidental repairs on machinery used in the work, and a blacksmith's services, are covered by both the statute and bond." The question of "incidental repairs on machinery," so far as the opinion discloses, was not involved in that case. Excluding from the statement there made the words "incidental repairs on machinery," the cases there cited support the principles stated, but none of them support the statement in its application to incidental repairs on machinery.

Even if the two decisions last referred to were authoritative upon the question of a surety's liability for incidental repairs or for necessary wear and tear of a contractor's or subcontractor's plant the repairs in question were not incidental repairs or inexpensive, but were general repairs, permanent in character, for the most part not made at the place where the road was being constructed, but many miles distant therefrom at plaintiff's works at La Grande, Oregon, for which the plaintiff claimed a balance due of $1,137.49, after deducting payments in excess of $1,000.

We can find no principle or authority upon which plaintiff's judgment for said balance can be sustained. The judgment is therefore reversed and the cause remanded, with directions to enter a judgment for the defendants, other than Neal & Gaskell.

REVERSED AND REMANDED WITH DIRECTIONS.