Muskingum County Court of Common Pleas.

GEORGE E. APPLEMAN V. SOUTHERN SURETY CO. ET AL.

Decided, April 14, 1928.

CHAS F. RIBBLE, J.

On or about December 20, 1924, Ebersbach Construction Company entered into a contract with the state of Ohio through its department of Highway and Public Works, for the construction of a certain roadway, known as Sections "P" and "Corning," Inter-county Highway No. 158 in Monroe Township, Perry County, Ohio; at or about the same time Southern Surety Company became surety upon the bond of the Ebersbach Construction Company for said work; said bond being given pursuant to the provisions of Section 1208, General Code (Section 1208, General Code, has since been amended and reference is made to that Section as it existed in December, 1924.) Thereupon Ebersbach Construction Company entered into a sub-contract with defendant J. A. Burroughs, whereby Burroughs was to construct and complete the work in question, furnishing the materials, appliances, tools and labor

necessary in the prosecution of said work to completion. In 1925 and 1926 the plaintiff sold Burroughs certain blasting material—dynamite, powder, fuses, caps, etc.— all of which was used in blasting upon this contract, and there is now due the plaintiff on account of such purchases the amount of $293.41. This action is brought to recover that amount. Trial has been had, at which time Burroughs was in default for answer. The Ebersbach Construction Company and the Southern Surety Company defend upon the ground that they are not liable for purchases of the character in question.

The questions raised in this case are—is the surety upon the bond of a contractor for state highway work liable for purchases of powder, dynamite, caps and fuses made by the contractor's subcontractor?

Is a contractor for state highway work liable for purchases of powder, dynamite, caps and fuses made by his subcontractor?

Section 1208, General Code is as follows:

"(1208) The state highway commissioner may reject all bids. Before entering into a contract the commissioner shall require a bond with sufficient sureties; conditioned as provided in 2365-1, 2365-4, inclusive, of the General Code, and also conditioned that the contractor will perform the work upon the terms proposed, within the time prescribed, and in accordance with the plans and specifications thereof, and that the contractor will indemnify the state, county or township against any damage that may result by reason of the negligence of the contractor in making said improvement. In no case shall the state be liable for damages sustained in the construction of any improvement under this chapter."

Section 2365-1, General Code, provides that, when a public improvement is to be constructed at public expense, it shall be the duty of the public body to require the usual bond provided in the statute, with good and sufficient sureties, and with the additional obligation for the payment by the contractor and by all subcontractors for materials furnished in the construction; erection, alteration or repair of such building, works or improvement.

Sections 2365-2, General Code, provides for the execution of such bond and the conditions thereof.

Section 2365-3, General Code, makes provisions for the filing of suit on such bond.

Section 2365-4, General Code, describes the form of such bond, and substantially provides that the surety shall pay all lawful claims of sub-contractors, materialmen and laborers, for labor performed and material furnished "in the carrying forward, performing or completing of said contract; we agreeing and assenting that this undertaking shall be for the benefit of any materialman or laborer having a just claim."

It is the contention of plaintiff herein that powder, dynamite, etc., used in the construction of highway improvement is "material" within the meaning of Section 2365-2, General Code, and also within the meaning of the mechanics lien law. The defendants however, contend that they are not "material" within the meaning of said sections, and that the defendants are not liable in this action.

It will be observed from an examination of these sections that the language of the one differs from the language of the other, in that Section 2365-1 uses the language, "materials furnished in the construction," while Section 2365-4, which provides for the form of the bond, uses the language "materials furnished in the carrying forward, performing, or completing of said contract." .

The language contained in Section 2365-1 is controlling, and the change in the wording of Section 2365-4 does not materially affect any change in the construction to be given to the intent and purpose of the Legislature. The form of the bond and its language can not change the requirements of the obligation to the materialmen as designated by Section 2365-1. So while Section 2365-4 appears to be broader in its terms, so far as the form of the bond required is concerned, its effect is no broader than that provided for in Section 2365-1.

So far as I have been able to find this precise question has not been decided by any Ohio court and the decisions in other states do not appear to be in exact accord. It appears, however, from Ohio decisions and also decisions of other states that the meaning to be given to the word "material" in cases of this kind is the same as that given to the term under the mechanics' lien law.

In 27 Cyc., page 45, paragraph 4, we find the following:

"The right to a lien for materials furnished extends to all such materials as ordinarily enter into or are used in

the construction, repair or improvement of buildings, etc., or which are within the expressed or implied terms of the building contract."

This quotation from Cyc. cites Note 51 on the same page, in which note is cited the case of *Hazard Powder Company* v. *Byrnes*. The holding is that where the building contract required rocks to be blasted and removed preparatory to building, powder and fuses necessarily used, came within the term "materials" for building.

Also the case of *Schaghticoke Powder Company* v. *Greenwich, etc., Company*, 183 New York, 306, 76 N. E., 153, is cited. The first syllabus of which case is as follows:

"Explosives used in breaking up earth which must be removed in the construction of a railway roadbed are materials used in the improvement of real property within the meaning of the statute providing a mechanics' lien for the furnishing of said materials." And in the opinion in that case the court uses the following language: 'The argument that dynamite is not a material, but a part of the contractor's plant, which, like picks and shovels, or mechanical appliances, are used in the performance of work, but are not considered materials furnished within the purview of the statute, seems to us inherently unsound. A steam shovel, an engine and boiler, picks, shovels, crowbars and the like, are tools and appliances, which, while used in the doing of the work, survive its performance and remain the property of the owner. Not so, however, with materials that are used up in the performance of the work, and are thereafter invisible except as they survive in tangible results. We think that explosives, when used as substitutes for other recognized 'materials,' are covered by the same principle.' Further on in the opinion the court says, however, 'It is but fair to say, however, that there (referring to the Hazard Powder Company case) the contract imposed upon the builder the duty of removing rock from the surface of the land preparatory to laying the foundation walls; and that fact was given prominence in arriving at the decision."

"Federal decisions may also be cited holding the view that dynamite, powder and such substances are 'materials' within the meaning of Mechanics' Lien Laws."

In Words and Phrases, 5th Volume, page 4412, under the

subject of "Materials" and subhead of "Powder, Fuses, etc.," we find the following:

"The term materials in the statute giving a lien for materials furnished in the construction of a railroad is not limited to materials which actually enter into and form a part of the railroad, but include any materials necessary for its construction and which are in fact used or consumed in building the railroad, and therefore a lien may arise for giant powder thus consumed."

"Citing in support of the above, *Rapuno Chemical Company* v. *Greenfield & N. Ry. Co.*, 59 Missouri Appeals, 6; *Giant Powder Company* v. *Oregon & Pacific R. R. Company* (U. S.), 42 Federal, 470."

The above cases herein referred to appear to bear out the contention of plaintiff herein and it will be noted that there are cases decided by the courts of Oregon, Missouri, New York, and the federal courts, supporting said contention. In some of the cases it will be noticed that the contract covered by the bond reuqired blasting to be done in specific terms.

In reviewing the decisions of courts in other states than Ohio, as above stated, there does not appear to be entire harmony. Some hold that in order to be "material" as intended by the statutes, it must be such material as physically entered into the actual construction of the improvement. Others hold that it need not physically enter into its construction if it is such material as will be entirely consumed and used in the construction. Others hold that even though it be entirely consumed and used up, it is still classed with tools and appliances which may and usually do outlive the performance of the work.

The federal courts have gone to quite the extreme in liberality in favor of the material men, and in some cases the extent to which they have gone appears somewhat ridiculous, but this can be accounted for to a large extent by reason of the wording of the legislative act, which will be referred to herein later.

As above stated, so far as Ohio decisions are concerned, the precise question here involved has not been decided, but our Supreme Court and also Courts of Appeals have recently considered the sections of the Code in question,

and we think have laid down the principle involved with clearness.

In the case of *Loyal Indemnity Company* v. *Day & Maddock Company,* 114 O. S., page 58, the first and fourth sections of the syllabus are as follow:

"1.  The surety on a bond executed by a contractor for the construction of a public building, in conformity to the requirements of Sections 2365-1, 2365-2 and 2365-4, General Code, does not thereby obligate himself to pay the rental, contracted to be paid by the principal in the bond for the use of a concrete mixer, hoisting engine, or other machinery used as appliances, or part of the equipment to facilitate the performance by the contractor of his contract, nor does he obligate himself for any other expense incident to such rental use."

"4.  There is such an analogy between Sections 2365-1, 2365-2 and 2365-4, General Code, and Sections 8310 and 8311, General Code, that it is apparent that, in the enactment of Sections 2365-1, 2365-2 and 2365-4, the Legislature intended to require the surety upon the bond required to be furnished by the contractor for the construction of a public building to be liable for such labor and material furnished for the construction of a public building as would be the subject of a lien under the Mechanic's Lien Law were the building privately owned."

This case involved the question as to whether or not the surety on the bond obligated himself to pay the rental of the concrete mixer, hoisting engine or other machinery used in the construction of the improvement. This case was decided February 2, 1926, and the opinion is by Robinson, Judge. After quoting many definitions. of material as found in Law Dictionary, Corpus Juris, Words & Phrases, Ruling Case Law, and text books, and citing and analyzing various decisions of both state and federal courts, he calls attention to the distinction which may be drawn between the provisions of the federal statutes and the provisions of the Ohio statute, in that the federal statute provides for a payment by the contractor "to all persons supplying him or them with labor and materials in the prosecution of the work," and the Ohio statute provides for the payment for "labor and material furnished to him in the construction of the building."

On February 7, 1927, the Court of Appeals for Cuyahoga county (Judge Sullivan rendering the opinion), in the case of the *Standard Oil Company* v. *Detroit Fidelity & Surety Company,* 24 Ohio Appellate, 108, well construes and discusses the principle involved in such cases. The question involved in that case was whether or not gasoline and oil consumed by the operation of the motor truck, while engaged in hauling materials for the improvement, were under the intentment of the statute "materials furnished in the construction" of the improvement. Sections 4 and 5 of the syllabus in that case are as follows:

"4. Gasoline and oil furnished to operate motor trucks carrying material for highway construction purchased by contractor do not enter into construction of improvement and are not covered by Section 2365-1, General Code, requiring surety on contractor's bond to pay for materials furnished in construction."

"5. Sections 2365-1 and 2365-4, General Code, requiring surety on contractor's bond to pay for materials furnished in construction of improvement, and in performing contract, includes only 'material' used in construction in physical sense and does not include material intended for construction."

Said Court of Appeals in its decision clearly lays down the broad principle that "materials," as meant and intended by these sections of the General Code, includes only such materials as in a physical sense enter into and become a part of the construction or improvement, and if we apply to dynamite, powder, etc., the principles laid down by said court in reaching the conclusion that oil and gasoline were not such materials, we are forced to come to the conclusion that neither is dynamite nor powder such material. By using the same reasoning of said Court of Appeals and paraphrasing that opinion, proceeding to consider the language of the bond in question (which is in form and substance in accordance with the requirement of the General Code), and giving the assured the benefit of a liberal construction thereof, we are first met with the proposition whether dynamite, powder, etc., actually and physically entered into the composition of what is known as the construction of the highway improvement. Is dyna-

mite or powder an element or ingredient of the improvement? Are they elements of material, physically connected with the formation of the structure constituting the public improvement? The answer necessarily is in the negative. A disintegration of the elements composing the improvement would not reveal the presence of dynamite or powder, and consequently they do not enter into the construction of the improvement, because they form no part thereof. Clearly, the purpose of the dynamite and the powder is to break up the rock so that it may be the more easily removed or replaced. The dynamite and powder are the power or force which operates upon the rock to break it into portions more easily handled. When they have performed that service of blasting out or breaking up said material their purposes are achieved and then and there end. Thus there is no direct relationship between the component parts of the improvement and the dynamite or powder used in the blasting. Hence they do not enter into the construction thereof, and it cannot be said that the legislature, in the language used in the statute, ever intended that the power or force necessary to blast out or break up the rock was material that entered into the construction of the improvement. Had it so intended, it is reasonable to conclude that it would have used language specifically conveying such an import, for it being obvious that there is no physical connection between the two, it would require specific language in the act itself to warrant an interpretation that could be reached only by doing violence to the natural and orderly course of common sense and logic. Using the rules which reasonable persons apply to the ordinary affairs of life, no conclusion could be reached that would establish the dynamite and powder as material entering into the construction of the improvement.

Judge Sullivan in his opinion says, "It would be dangerous indeed without clear legislative authority to establish the doctrine that material not used in a construction in a physical sense is nevertheless part of the construction, notwithstanding that as a matter of actual fact the contrary is true; and in closing his opinion uses the follow-

ing words: "Supporting our views herein are the definitions of the words 'material' and 'construction,' for we find that in all the authorities reference is had to materials which actually and physically become a composite part of the improvement itself."

It will be of interest to note some of the definitions of "material."

Bouvier's Law Dictionary defines materials as "matter which is intended to be used in the creation of the mechanical structure," and defines material men as "persons who furnish materials to be used in the construction or erection of ships, houses or buildings."

39 Corpus Juris, page 1385, defines material thus: "In general a term importing the substance matter of which anything is made—the substance or matter of which anything is made or may be made; everything of which anything is made; matter which is intended to be used in the creation of a mechanical structure. The term material is commonly used to designate any article employed in the erection and completion of buildings. According to the lexicographical definitions of the term, material does not include tools, machinery or appliances used for the purpose of facilitating the work but which are not incorporated into the structure."

Words and Phrases (Second Series), page 326, reads: "There is a wide distinction between material and appliance. The term appliance refers to machinery and all the instruments used in operating it. Materials include everything of which anything is made."

In 5 Words and Phrases, at page 4410, we find, "The term materials in a statute giving a lien to material men for materials sold to be used in constructing certain improvements means materials which become a part of the completed work and does not include tools of the trade, as picks, shovels, etc."

Donnelly on the Law of Public Works, page 469, paragraph 331, says: "The general rule is that the bond is only liable for labor or materials furnished or supplied which have gone into and become a part of the work. Accordingly it is the general rule in bonds given on state and

city work that no recovery can be had for machinery used or repaired in the prosecution of the work. A contractor is presumed to be prepared with machinery, tools and appliances necessary to carry out his contract."

I therefore have come to the conclusion that in following the principle laid down by our Ohio courts, so far as the matter has been considered in this state, I am required to come to the foregoing conclusions of law applicable to this case.

Finding and judgment for plaintiff against the defendant J. A. Burroughs, on default, for $329.39, with interest from April 2, 1928, and for plaintiff's costs.

Finding and judgment in favor of the defendants, the Southern Surety Company and the Ebersbach Construction Company, and the petition is dismissed as to them at plaintiff's costs, for which judgment is awarded.

Exceptions to plaintiff. Motion for new trial filed and overruled. Exceptions to plaintiff.